937 N.E.2d 831 (2010)
STATE of Indiana, Appellant-Petitioner,
v.
J.S., Appellee-Respondent.
No. 49A02-1004-JV-567.
Court of Appeals of Indiana.
November 16, 2010.
*832 Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.
Anna Onaitis Holden, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellee.

OPINION
BAKER, Chief Judge.
Here, a juvenile has struggled for most of his life with multiple social and developmental disorders. After being charged with being a delinquent child for certain sex offenses, J.S.'s competency to stand trial was evaluated by three professionals. Two of the three found him incompetent to stand trial, and the juvenile court dismissed the petition.
Appellant-petitioner State of Indiana appeals the trial court's dismissal of the State's delinquency petition against appellee-respondent J.S., arguing that the trial court erred by finding J.S. incompetent to stand trial and dismissing the delinquency petition. Finding that the dismissal of the delinquency petition was not an abuse of discretion and did not unduly endanger the public, we affirm.

FACTS
Sixteen-year-old J.S. has a history of psychological and developmental difficulties. In 2005, while J.S. was still in elementary school, he began receiving treatment at Midtown Community Mental Health Center. He has been diagnosed with an autism spectrum disorder, an anxiety disorder, intermittent explosive disorder, ADHD, and major depression. Additionally, he has had multiple developmental and social difficulties:
[J.S.] exhibited delays in motor, cognitive, language, and social development as well as demonstrating difficulties with transitions, having hypersensitivity to environmental stimuli, being fixated on a specific area of interest, symptoms of anxiety, attention/focus problems, difficulties interpreting social cues, and poor socialization with same-age peers. At school and at home, [J.S.] often becomes fixated on his "origami" and folds paper into various objects in an attempt to cope with environmental stressors. As part of his diagnosis, he lacks the basic social and coping skills needed to manage intense feelings and anxiety.
Appellant's Conf'l App. p. 1. J.S. has taken medication for years to help manage his difficulties.
On September 16, 2009, the State filed a petition alleging J.S. to be a delinquent child for committing acts that would constitute class B felony criminal deviate conduct, class C felony child molesting, class C felony confinement, and class D felony intimidation, had they been committed by an adult. On October 7, 2009, J.S. filed a request for a determination of his competence to stand trial, which the juvenile court granted on October 9.
On October 26, 2009, Dr. Ann Lagges submitted her competency evaluation. Dr. Lagges observed that J.S.'s thought processes were tangential and that "[e]ven with frequent redirection, [J.S.] struggled to give complete, sensible answers to questions." Id. at 31. When responding to *833 questions, J.S. typically has "some correct information, but struggles to identify the most relevant information, and struggles to respond to more directed questions." Id. at 32. When questioned about the charges he was facing,
[h]e truly did not seem to grasp the difference between consequences/implications of consensual, but perhaps unwise sexual activity, versus rape or child molestation. The concern here is that while [J.S.] understands he is being accused of doing something wrong, it seems, despite teaching efforts, that he believes that the core issue is the risk of unwanted pregnancy. He understands he is in trouble, but does not truly seem to grasp the gravity of the charge.
Id. Ultimately, Dr. Lagges concluded that J.S. is not competent to stand trial, primarily because he "does not seem to grasp why child molestation is illegal or wrong, or the gravity of the charge." Id. at 33. She recommended participation in a sex offender treatment program and a reevaluation of his medication regimen.
On November 2, 2009, Dr. David Posey submitted his competency evaluation. Dr. Posey opined that J.S.
appears to understand that he is being charged with crimes related to an alleged sexual incident with an 11-year-old girl. He understands that this is potentially serious and could result in further detention. He understands that he has a lawyer and that she is on his side. He has a fairly good understanding of court proceeding.
Id. at 36. Ultimately, Dr. Posey concluded that J.S. is competent to stand trial.
The juvenile court held an initial competency hearing on November 4, 2009, took the competency issue under advisement, and later ordered a third evaluation by Dr. Jim Dalton, who submitted his report on March 4, 2010. Dr. Dalton evaluated J.S. following an extensive and comprehensive clinical interview and mental status exam, interviews with J.S. and his mother both together and separately, a tour of J.S.'s home, and interviews of the family's neighbors and friends. Dr. Dalton observed that J.S.'s "interactions were inconsistent and odd" and that he "did not appear to understand the reason for the assessment session." Id. at 42. J.S. "had very limited insight and very limited judgment" and had "some difficulty with verbal and nonverbal comprehension." Id. Additionally, Dr. Dalton opined that J.S. was unable to understand the magnitude of the charges he was facing:
While [J.S.] can express that his past behaviors were "wrong" and resulted in his arrest, he is unable to grasp the concepts of what makes the behaviors wrong or inappropriate. He clearly does not understand the magnitude or gravity of his charges. While [J.S.] is able to describe and have basic understanding of the roles of individuals in the courtroom, he does not appear to have an understanding of how the behaviors of these people may affect him or the outcome of his caseas it pertains to personal consequences.
Id. at 45. Ultimately, Dr. Dalton concluded that J.S. is not competent to stand trial and recommended a number of specialized interventions and family support.
On March 18, 2010, the juvenile court held a competency hearing. At the hearing, J.S.'s mother explained that she had voluntarily transferred J.S. to a new counseling program that specializes in helping children with autistic disorders. He was receiving counseling at the new center twice a week, and would be able to receive sex offender counseling in addition to the other counseling. At the close of the hearing, the juvenile court found J.S. incompetent *834 to stand trial and dismissed the delinquency petition. The State now appeals.

DISCUSSION AND DECISION
The State argues that the juvenile court erred by finding J.S. incompetent to stand trial and dismissing the delinquency petition. We review a juvenile court's ruling on a motion to dismiss a delinquency petition for an abuse of discretion. W.C.B. v. State, 855 N.E.2d 1057, 1059 (Ind.Ct.App.2006).
Here, the juvenile court reviewed three competency evaluations of J.S. Two of the three doctors found him incompetent to stand trial, while the third found him competent. It was for the juvenile court to assess the credibility of the reports and the parties, weigh the evidence, and reach a conclusion as to competency. With two thorough, extensive expert reports in the record finding that J.S. did not understand the magnitude of the charges facing him, that he was unable to assist in his defense, and was unable to communicate effectively, we cannot say that the juvenile court abused its discretion in finding J.S. incompetent to stand trial.
The State asks that the delinquency petition remain pending while J.S. receives treatment and attempts to achieve competency. We note that very recently, this court found, in an adult criminal context, that it is a violation of due process to permit criminal charges to hang over a defendant's head indefinitely when the defendant is mentally ill, incompetent to stand trial, and will remain incompetent for the rest of his life. Curtis v. State, 932 N.E.2d 204, 208 (Ind.Ct.App.2010), trans. pending. Here, although the experts did not reach a conclusion as to whether J.S. will ever regain competency, we note that he is a juvenile and, as such, there is only a limited amount of time left until he is an adult and no longer subject to the jurisdiction of the juvenile courts. Furthermore, the record reveals that J.S. has suffered fromand been treated formultiple debilitating social and developmental disorders for much of his young life, and the juvenile court would not have abused its discretion to have concluded, based on this record, that J.S. is unlikely to regain competency before he reaches the age of eighteen, if ever.
Additionally, the State emphasizes that one of the purposes of the juvenile justice system is protection of the community, contending that this goal is not served by discharging J.S. free and clear of any counseling or other requirements. The record reveals, however, that J.S.'s family is aware of his problems, has historically done everything in its power to help him, and intends to continue to do so. Specifically, J.S. attended bi-weekly counseling sessions and took medication for his issues long before the inception of the instant matter. Before J.S. was released from detention in this matter, his mother made arrangements to increase the frequency of his psychiatric appointments, and she eventually transferred him to a different center that specializes in the treatment of autistic children and that could also provide him with sex offender counseling.
J.S. also has an Individualized Education Program (IEP) through Indianapolis Public Schools. His IEP contains strict provisions regarding his supervision at school to ensure that he is never alone or unsupervised at school. Similarly, the safety plan that J.S. filed with the juvenile court outlines the strict, minute-by-minute supervision his mother now provides around the clock at home. That supervision includes an alarm on his bedroom door to alert his mother if he exits his room. There is no evidence in the record that J.S. violated the terms of his release before this matter was dismissed.
*835 Given this record, it is clear that J.S. is receiving the care, protection, treatment, and rehabilitation that he needs. Furthermore, the adults in his life at home, at school, and at the counseling center have set up safeguards to protect the public. Under these circumstances, we do not find that the juvenile court's decision to dismiss the delinquency petition unduly endangers the public such that the dismissal must be reversed. Therefore, given the finding of incompetency to stand trial, which we have already found was not an abuse of discretion, the trial court did not err by dismissing the delinquency petition against J.S.
The judgment of the juvenile court is affirmed.
NAJAM, J., and MATHIAS, J., concur.