# FOR PUBLICATION



**FILED**

Feb 07 2013, 8:51 am

**CLERK**

of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW A. KOBE**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DARREN BEDWELL**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-526 |
| | ) | |
| WILLIAM COATS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Collins, Judge
Cause No. 49F08-1004-FD-30232

**February 7, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

The State appeals the trial court's denial of its motion to commit William Coats to the Indiana Division of Mental Health and Addiction ("DMHA"). We affirm.

## Issue

The State raises one issue, which we restate as whether the trial court properly denied the State's motion to commit Coats to the DMHA for competency restoration services.

## Facts

On April 15, 2010, the State charged Coats, who was born in 1943, with Class D felony sexual battery against his granddaughter. Coats had been diagnosed with Alzheimer's disease, and Coats's counsel filed a motion to determine Coats's competency to stand trial. The trial court assigned two doctors to examine Coats. Both doctors diagnosed Coats with dementia. Noting that dementia is a progressive disease, both doctors found that Coats would not improve over time and that there was little chance of Coats being restored to competency.

At a hearing on February 7, 2012, the trial court found that Coats was incompetent and "will not return to competency." Tr. p. 6; see also Appellant's App. p. 31. The trial court noted that Coats was residing with his wife and was not a public safety risk at that time. The State requested that Coats be committed to the DMHA, but the trial court denied the motion.

On February 29, 2012, the State filed a written request that Coats be committed to the DMHA pursuant to Indiana Code Section 35-36-3-1. The State argued that Coats's

2

commitment was required due to the trial court's finding that Coats was incompetent. On March 20, 2012, Coats filed a motion to dismiss the charges due to his incompetency. Coats argued that, since he could not be returned to competency, his commitment would result in a violation of his constitutional rights.

At another hearing on June 15, 2012, Coats's counsel again argued that Coats was incompetent and could not be restored to competency. Coats's counsel asked that the charges be dismissed. The State again asked that Coats be committed to the DMHA. The trial court denied both motions and reset the matter for another hearing in three months. The trial court granted the State's motion to certify the order for interlocutory appeal, and this court accepted jurisdiction pursuant to Indiana Appellate Rule 14(B).

## Analysis

The issue is whether the trial court properly denied the State's motion to commit Coats to the DMHA.[1] According to the State, the trial court failed to follow the relevant competency statutes when it denied the State's request to commit Coats. Coats argues that his commitment would violate his constitutional rights.

"Statutes control the appropriate way to determine a defendant's competency and, if necessary, to commit the defendant and provide restoration services." Curtis v. State, 948 N.E.2d 1143 (Ind. 2011). "In the interpretation of statutes, the trial court's 'goal is to determine and give effect to the intent of the legislature in promulgating it.'" Ryan v. State, 900 N.E.2d 43, 44-45 (Ind. Ct. App. 2009) (quoting Porter Dev., LLC v. First Nat'l

---

[1] Coats does not appeal the denial of his motion to dismiss.

Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007)). Our primary resource for this determination is the language used by the legislature. Id. Thus, "our interpretation begins with an examination of the statute's language." Id. "We presume that the words of an enactment were selected to express their common and ordinary meanings." Id. "Where the statute is unambiguous," we "read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings." Id. Statutory interpretation is a question of law reserved for the court and is reviewed de novo. Shaffer v. State, 795 N.E.2d 1072, 1076 (Ind. Ct. App. 2003). De novo review allows us to decide an issue without affording any deference to the trial court's decision. Id.

The State sought to have Coats committed to the DMHA pursuant to Indiana Code Chapter 35-36-3, which governs comprehension to stand trial. Indiana Code Section 35-36-3-1 provides that, if the trial court finds the defendant lacks the ability to understand the proceedings and assist in the preparation of his or her defense, the trial court:

> shall delay or continue the trial and order the defendant committed to the division of mental health and addiction. The division of mental health and addiction shall provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party in the:
>
> (1) location where the defendant currently resides; or
>
> (2) least restrictive setting appropriate to the needs of the defendant and the safety of the defendant and others.

Within ninety days, the superintendent of the institution where the defendant is committed must certify to the trial court whether the defendant has a "substantial

4

probability" of attaining competency "within the foreseeable future." Ind. Code § 35-36-3-3(a); see also Curtis, 948 N.E.2d at 1153. If a "substantial probability does not exist," the DMHA "shall initiate regular commitment proceedings under IC 12-26." I.C. § 35-36-3-3(b). If there is a substantial probability, the DMHA has six months from the original admission or initiation of services to continue providing competency restoration services. Id.; Curtis, 948 N.E.2d at 1153. At the end of those six months, if the defendant has still not attained competency, the DMHA must initiate regular commitment proceedings. I.C. § 35-36-3-4.

The trial court here found that Coats was incompetent, and the State does not dispute that finding. The State argues, however, that once an incompetency finding was made, the trial court was statutorily required to commit Coats to the DMHA. Instead, the trial court found that Coats would not return to competency and denied the request to commit him. The State contends that the statutory framework does not allow the trial court to make a determination as to whether Coats can be returned to competency; rather, that decision is left to the DMHA. Coats argues that the State's interpretation of the statute conflicts with Jackson v. Indiana, 406 U.S. 715, 92 S. Ct. 1845 (1972). According to Coats, in light of the trial court's finding that he cannot be returned to competency, his commitment for competency restoration services would violate his equal protection and due process rights.

We begin by discussing the United States Supreme Court's opinion in Jackson. There, the defendant was charged with two robberies but was found to be incompetent. He was committed to the Department of Mental Health until the Department could certify

5

that he was "sane." Jackson, 406 U.S. at 719, 92 S. Ct. at 1848. Defendant's counsel contended that the trial court's order amounted to a life sentence without ever being convicted of a crime because the defendant would never be competent. The Indiana statutory scheme at that time made "no statutory provision for periodic review of the defendant's condition by either the court or mental health authorities." Id. at 720, 92 S. Ct. at 1849.

The Supreme Court noted that the statute did not make the likelihood of the defendant's improvement a relevant factor and that the record established that the defendant's chances of "ever meeting the competency standards" were "at best minimal, if not nonexistent." Id. at 727, 92 S. Ct. at 1852. Further, the defendant's long-term commitment under the competency statute subjected him "to a more lenient commitment standard and to a more stringent standard of release than those generally applicable to all others not charged with offenses . . . ." Id. at 730, 92 S. Ct. at 1854. As a result, the Court concluded that the defendant's commitment deprived him of his equal protection rights under the Fourteenth Amendment. The Court also held:

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant. Furthermore, even if it is determined that the defendant probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal.

6

Id. at 738, 92 S. Ct. at 1858 (footnote omitted).

The statutes at issue here do not raise the same concerns that the court addressed in Jackson. The current competency statutes require a report to the trial court within ninety days regarding whether the defendant has a substantial probability of attaining competency. I.C. § 35-36-3-3(a). If a substantial probability does not exist, the DMHA must institute regular commitment proceedings. I.C. § 35-36-3-3(b). If a substantial probability does exist, the DMHA must again report to the trial court within six months of the original admission or initiation of competency restoration services. Id. If the defendant does not attain competency during those six months, the DMHA must institute regular commitment proceedings. I.C. § 35-36-3-4. Coats makes no argument that the ninety day and six month reporting requirements in the current statutory scheme exceed the "reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." Jackson, 406 U.S. at 738, 92 S. Ct. at 1858. Thus, the concerns addressed by Jackson are not evident here.

It is clear that the competency statute required the trial court to commit Coats to the DMHA for competency restoration services once the trial court found Coats incompetent. See I.C. § 35-36-3-3. However, it is also clear that, in this case, those competency restoration services would be ineffective given Coats's progressive dementia. Our supreme court addressed the competency statutes in Curtis v. State, 948 N.E.2d 1143 (Ind. 2011). There, the defendant was diagnosed with dementia, and one doctor concluded that he would "never be restored" to competency and another concluded that it was "unlikely" he would be restored to competency. Curtis, 948 N.E.2d

7

at 1146. The trial court stated that the defendant would "never become competent," but the trial court then denied the State's request to commit him to the DMHA and denied the defendant's motion to dismiss the charges. Id.

The defendant appealed the denial of his motion to dismiss. In discussing the defendant's due process rights, our supreme court noted that the statutory procedures "establish a comprehensive method that balances the various interests at stake." Id. at 1153. "Involuntary commitment is a clear deprivation of the defendant's liberty that can be justified only on the basis of legitimate state interests." Id.

> The State has dual interests in committing an incompetent defendant: (1) to restore the accused to competency due to the "right of the public and the defendant to the prompt disposition of criminal charges pending against him" and (2) to protect the defendant "against being required to answer to charges that she lacks the capacity to understand or assist her attorney in defending against."

Id. at 1154 (quoting State v. Davis, 898 N.E.2d 281, 289 (Ind. 2008)). "Of course, the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency." Id. Noting that the trial court had never found the defendant incompetent nor committed him, our supreme court held: "There is no viable fundamental-fairness argument when [the defendant] has not been involuntarily committed and when there has been no appropriate finding that he will never be restored to competency." Id. at 1154.

This court's opinion in State v. J.S., 937 N.E.2d 831 (Ind. Ct. App. 2010), trans. denied, is also relevant here. There, a sixteen-year-old juvenile had multiple social and developmental disorders. The State filed a delinquency petition alleging that the juvenile

8

had committed various sex offenses, and the trial court eventually found that he was incompetent. The trial court then dismissed the delinquency petition.

The appeal concerned the dismissal of the delinquency petition, not the failure to commit the juvenile. This court noted that, although the trial court did not make a finding regarding whether the juvenile would regain competency, the record showed that he was "unlikely to regain competency before he reaches the age of eighteen, if ever." J.S., 937 N.E.2d at 834. After reviewing the circumstances and the purposes of the juvenile justice system, this court held that "it is clear that J.S. is receiving the care, protection, treatment, and rehabilitation that he needs." Id. at 835. This court found that the juvenile court's decision to dismiss the delinquency petition did not unduly endanger the public.

Although neither Curtis nor J.S. addressed the exact situation and issues here, both emphasized the purposes of the relevant statutes. Our supreme court has also emphasized the purposes of the competency statutes in Davis, where it noted:

> Justification for the commitment of an incompetent accused is found in the State's interest in the restoration of the accused to competency because of the right of the public and the defendant to the prompt disposition of criminal charges pending against him, Strunk v. United States, 412 U.S. 434, 439 n. 2, 93 S. Ct. 2260, 37 L.Ed.2d 56 (1973), and the protection of the accused against being required to answer to charges that she lacks the capacity to understand or to assist her attorney in defending against. Drope [v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896 (1975)]. Commitment of an accused thus focuses on the State's interest in the accused's restoration to competency and necessarily entails a finding of probability that the accused can be so restored.

Davis, 898 N.E.2d at 289.

9

Here, the trial court expressly found that restoration to competency is improbable and unlikely, and the report supports that finding. Although the better practice in most cases is to follow the statutory commitment procedures, given Coats's progressive dementia and the trial court's finding that he will not be restored to competency, the purposes of the competency restoration process cannot be met by following those procedures here. It is clear that Coats's dementia will progress, and there simply is no hope nor medical reason to believe that competency will be restored. The discussion in Curtis informs and instructs us that "the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency." Curtis, 948 N.E.2d at 1154. We conclude that the trial court properly denied the State's motion to commit Coats.[2]

**Conclusion**

The trial court properly denied the State's motion to commit Coats to the DMHA. We affirm.

Affirmed.

BAKER, J., concurs.

RILEY, J., dissents with opinion.

---

[2] We also note Coats's argument that the denial of the motion to commit Coats under the competency restoration statute does not prevent the prosecutor from bringing regular commitment proceedings under Indiana Code Chapter 12-26-7. That chapter applies to the commitment of an individual alleged to be mentally ill and either dangerous or gravely disabled whose commitment is expected to last more than ninety days. I.C. § 12-26-7-1. The chapter contains a list of those that may file regular commitment procedures, including a health officer, police officer, friend, relative, spouse, or guardian of the individual, the superintendent of the facility where the individual is present, or the prosecuting attorney under certain circumstances. I.C. § 12-16-7-2. Those circumstances are not present here, and the State correctly notes that the prosecuting attorney would be unable to file for a regular commitment. However, the temporary commitment procedures do not have the same requirements as to who may file. See I.C. § 12-26-6-2(b) (noting that a petitioner must be at least eighteen years old). Thus, if appropriate, a prosecutor could file for temporary commitment.

# IN THE
# COURT OF APPEALS OF INDIANA

STATE OF INDIANA,                    )
                                     )
    Appellant-Plaintiff,         )
                                     )
           vs.                )    No.  49A02-1206-CR-526
                                     )
WILLIAM COATS,                       )
                                     )
    Appellee-Defendant.          )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's decision to affirm the trial court's denial of the State's motion to commit Coats to the Department of Mental Health and Addiction (DMHA). The statutory scheme does not allow the trial court discretion over the statutory commitment procedures. If the trial court finds that a defendant lacks the ability to understand the proceedings and assist with the preparation of his defense, "it *shall* delay or continue the trial and order the defendant committed" to the DMHA. Ind. Code § 35-36-3-1(b) (emphasis added). Consequently, the statute does not give the trial court discretion to decline to order commitment even where it concludes that the defendant could never be returned to competency.

11

In support of its conclusion, the majority latches on to one sentence in *Curtis v. State*, 948 N.E.2d 1143 (Ind. 2011). There, the supreme court noted that the State's dual interests of competency restoration and protection of the accused "cannot be realized if there is a finding that a defendant cannot be restored to competency." *Id.* at 1159. From this premise, the majority reasons that if "the purposes of the competency restoration process cannot be met" there is no need to follow the statutory commitment procedures. Slip Op. at *10. Yet, it is a stretch to conclude that the process itself must be abandoned where the trial court has determined that the defendant lacks competency.

Indeed, that result is expressly foreclosed by I.C. § 35-36-3-1(b), which requires the trial court to take the additional step of ordering commitment following its determination that the defendant lacks competency. Following commitment, the DMHA superintendent or authorized third party contractor has ninety days to observe and provide treatment to an incompetent defendant. I.C. § 35-36-3-3. If there is a substantial probability that the defendant will attain the ability to understand and assist with his defense, DMHA has up to six months to provide further competency restoration services. I.C. § 35-36-3-3(b). However, if substantial probability does not exist, whether at the outset or after a six month interim provision of competency restoration services, DMHA must institute regular commitment proceedings under I.C. art. 12-26. I.C. § 35-36-3-3(b); -4.

The majority concedes as much. Its admission that "[a]lthough the better practice in most cases is to follow the statutory commitment procedures" is nothing more than a concession that procedures should be followed. Slip Op. *10. Indeed, there are

12

compelling reasons why this is so. Foremost is the clear duties assigned to the trial court and the DMHA. The trial court determines whether the defendant is incompetent in the first instance, but the statutory scheme entrusts the ultimate determination on competency to the superintendent, who has not only the skills to make such observations but also the time within which to do so. In sum, the express statutory directive and the comprehensive nature of the statutory commitment scheme overcome even those cases where a progressive illness renders no hope nor medical reason to believe competency will be restored. I would therefore reverse the trial court's denial.