

**FILED**

Nov 26 2013, 5:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EVAN LEEDY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1303-CR-102 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
Cause No. 49G01-1203-FB-17254

**November 26, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

The State charged Evan Leedy with four felony counts of operating while intoxicated ("OWI") stemming from an automobile accident in which his girlfriend was killed and another motorist was seriously injured. The defense sought to have him declared incompetent to stand trial, and the trial court found him incompetent and committed him to the Division of Mental Health and Addiction ("DMHA") pursuant to Indiana Code Section 35-36-3-1. Leedy sought review via interlocutory appeal, and the trial court stayed his commitment pending our review. Finding that the trial court followed the statutory procedure and that the statute does not run afoul of Leedy's due process rights, we affirm.

**Facts and Procedural History**

Late one night in February 2012, Leedy was driving about eighty miles per hour with his girlfriend on an Indianapolis street. His blood alcohol content ("BAC") was .15, and he ran a red light, colliding with a pickup truck. Leedy's girlfriend died shortly thereafter, and the driver of the truck suffered serious injuries. Leedy suffered a brain injury and was comatose for about a month. The State charged him with class B felony OWI with a BAC of at least .15 causing death, class C felony OWI causing death, class D felony OWI causing serious bodily injury, and class D felony OWI with a BAC of at least .08 causing serious bodily injury.

In May 2012, Leedy filed a motion for competency and sanity evaluation to determine whether he was competent to stand trial.[1] He underwent mental evaluations with court-

---

[1] During the pendency of the proceedings, Leedy was living at home with his mother.

appointed psychiatrist Dr. George Parker and court-appointed clinical psychologist Dr. Shelvy Keglar.  The doctors submitted reports to the trial court, which conducted a series of competency hearings.  At the hearings, both doctors testified that Leedy could not understand the nature of the charges and proceedings against him and could not assist his counsel in conducting his defense.  The doctors testified concerning Leedy's need of physical and occupational therapy.  They further testified concerning the various services available at the state psychiatric hospitals, with the Logansport State Hospital ("Logansport") focusing on competency evaluations for criminals awaiting trial and housing mostly patients with mental illness and disability rather than those with traumatic brain injuries.  Dr. Parker testified that he was not optimistic about Leedy's chances of being restored to competency.  Dr. Keglar testified that with a cognitive rehabilitation program, Leedy could possibly be restored to competency within one to two years.  The trial court took the matter under advisement and set another hearing to hear testimony from representatives of DMHA.

At a November 2012 hearing, the medical director of Logansport, Dr. Danny Meadows, testified that although most of the patients at the facility suffer from mental illness or disability rather than from traumatic brain injury, he and his colleagues had treated patients similarly situated to Leedy.  He also testified that while the success rate for competency restoration is lower for patients with Leedy's type of injury than for mental illness patients, Logansport would be capable of evaluating Leedy and attempting restoration services.  Additionally, he reported that any therapeutic services that Leedy would need that were not provided at Logansport would be outsourced to area professionals. He stressed that it would

be Logansport's responsibility to meet all of Leedy's clinical needs and that Logansport personnel would transport him for outsourced services. Finally, he testified that while the Larue D. Carter Memorial Hospital ("Larue Carter") in Indianapolis was more geared to handle brain injury patients in need of physical or speech therapy, Logansport was specifically geared toward treating patients awaiting trial on criminal charges and that the Logansport experts could possibly know within six months whether Leedy could be restored to competency.

DMHA chief counsel Katherine Gregory testified concerning the procedures for determining which of the state psychiatric facilities best meets the needs of a given patient. She stated that although Logansport would be the most routine placement for Leedy, DMHA would make an effort to place him where his specific needs could best be met. She also referenced the effect of DMHA's funding constraints on outpatient restoration services.

At the close of the hearing, the trial court determined that Leedy was incompetent to stand trial and committed him to DMHA pursuant to Indiana Code Section 35-36-3-1(b). The trial court stayed the commitment order so that the parties could submit briefs concerning Leedy's challenge to the constitutionality of the commitment statute. At a hearing on January 4, 2013, the trial court denied Leedy's motion to declare the statute unconstitutional. However, the court again stayed the commitment order pending Leedy's pursuit of an interlocutory appeal, which we accepted.

Leedy contends that his commitment to DMHA pursuant to Indiana Code Section 35-36-3-1 violates his due process rights. Because it presents a question of law, we review a matter of statutory interpretation using a de novo standard. *Sloan v. State*, 947 N.E.2d 917, 921 (Ind. 2003). When interpreting a statute, our goal is to determine and give effect to the legislature's intent in promulgating it. *Ryan v. State*, 900 N.E.2d 43, 44-45 (Ind. Ct. App. 2009). Thus, we begin by examining the language of the statute, presuming that the words were selected to express their common and ordinary meanings. *Id*. at 45. Where the statute is unambiguous, we accord each word and phrase its plain, ordinary, and usual meaning, without having to resort to rules of construction to decipher meanings. *Id*.

Leedy essentially raises due process challenges to both the statute itself and the trial court's action in committing him pursuant to the statute. Indiana Code Section 35-36-3-1 provides a mechanism for determining whether a defendant is competent to stand trial, stating in pertinent part,

> (a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested:
>
> (1) psychiatrists;
>
> (2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology; or
>
> (3) physicians;

5

who have expertise in determining competency.

…. The individuals who are appointed shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.

(b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it *shall* delay or continue the trial and order the defendant committed to [DMHA]. [DMHA] shall provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party in the:

(1) location where the defendant currently resides; or

(2) least restrictive setting appropriate to the needs of the defendant and the safety of the defendant and others.

(Emphasis added.)

Although Leedy acknowledges the mandatory language contained in subsection (b), he asserts that after the trial court made the incompetency finding,[2] it nonetheless violated his due process rights by ordering his commitment to DMHA. In this vein, Leedy essentially asserts that the statute is unconstitutional as applied to him.

Involuntary commitment is a clear deprivation of a defendant's liberty and can only be justified on the basis of legitimate state interests. *Curtis v. State*, 948 N.E.2d 1143, 1153 (Ind. 2011).

The State has dual interests in committing an incompetent defendant: (1) to restore the accused to competency due to the right of the public and the

_____

[2] Leedy does not challenge the procedure followed by the trial court in conducting the competency hearings under subsection (a).

6

defendant to the prompt disposition of criminal charges pending against him and (2) to protect the defendant against being required to answer to charges that [he] lacks the capacity to understand or to assist [his] attorney in defending against [the charges].

*Id*. at 1154 (citation and internal quotation marks omitted). "Commitment of an accused thus focuses on the State's interest in the accused's restoration to competency and necessarily entails a finding of probability that the accused can be so restored." *State v. Davis*, 898 N.E.2d 281, 289 (Ind. 2008).

The statute clearly states that the determination concerning the probability of restoring a defendant's competency is made by DMHA or contracted third party service provider. Indiana Code Section 35-36-3-3(a) gives the superintendent of the institution where the defendant is committed or the director of the third party contractor ninety days to certify to the trial court "whether the defendant has a substantial probability of attaining the ability to understand the proceedings and assist in the preparation of the defendant's defense within the foreseeable future." Subsection (b) outlines how DMHA or a third party contractor must proceed if a substantial probability does or does not exist. *See* Ind. Code § 35-36-3-3(b) (if substantial probability does not exist, initiate regular commitment proceedings;[3] if substantial probability does exist, retain defendant until he attains competency or for six months, whichever occurs first).

Leedy essentially argues that Indiana Code Section 35-36-3-1 is unconstitutional as applied to him because it is specifically geared toward those with mental illness or disability

---

[3] As outlined in Indiana Code Article 12-26.

and not to defendants who, like himself, are incompetent due to traumatic brain injury. At the outset, we note that there is nothing in the statutory language indicating such a distinction based on the source of a defendant's incompetency. To the extent that the source of his incompetency may affect his statistical probability of restoration, it is relevant in making that determination.

As support for his due process argument, Leedy relies on three cases. In the first, *Davis*, our supreme court held that it is a violation of due process not to dismiss criminal charges against an incompetent defendant where experts opined that the defendant could not be restored to competency due to her paranoid schizophrenia and where her accrued period of commitment had exceeded the maximum possible confinement in the event of an eventual conviction. 898 N.E.2d at 283-84. Here, Leedy does not seek to have the charges dismissed. Moreover, because the trial court stayed the commitment order pending the filing of this interlocutory appeal, Leedy is not in the custody of DMHA, but rather is living with his mother. Finally, as discussed below, the evidence is conflicting concerning Leedy's chances of being restored to competence. As such, *Davis* is factually distinguishable.

Leedy also relies on *Curtis*, which involved a fifty-nine-year-old developmentally disabled defendant seeking dismissal of charges of residential entry, battery, and criminal mischief. 948 N.E.2d at 1146. Although the trial court ordered a competency evaluation in which one of two experts determined that Curtis could never be restored to competency due to dementia and the other found restoration unlikely, the trial court never actually made an

8

incompetency finding and never committed the defendant to DMHA.[4] *Id*. at 1153. Curtis claimed that the failure to dismiss the charges pending against him violated his due process rights. *Id*. at 1151. Our supreme court dismissed Curtis's charges not on due process grounds, but on the basis of Indiana Criminal Rule 4(C).[5] *Id*. at 1154. With respect to Curtis's due process argument, our supreme court specifically stated that our statutes control the appropriate way to determine incompetency to stand trial and probability of restoration and that the procedures outlined therein "establish a comprehensive method that balances the various interests at stake." *Id*. at 1153. "If the trial court finds a defendant incompetent, the trial court must commit the defendant to the DMHA, and the DMHA must provide competency services." *Id*. The *Curtis* court held that "[t]here is no viable fundamental-fairness argument when Curtis has not been involuntarily committed and there has been no appropriate finding [by DMHA] that he will never be restored to competency." *Id*. at 1154. Thus, despite the factual and procedural distinctions between *Curtis* and the present case, what we can glean from *Curtis* is that our supreme court requires adherence to the clear language of the statute concerning who shall make the determination concerning a defendant's probability of regaining competency: DMHA.

In support of his argument that the trial court is nevertheless not *required* to commit him to DMHA, Leedy cites a very recent decision by another panel of this Court, *State v.*

---

[4] Notably, the trial court denied the State's motion to have Curtis committed to DMHA based on its determination that the State's interest in restoring Curtis could not be accomplished.

[5] *See* Ind. Criminal Rule 4(C) (stating that no person shall be held to answer criminal charge for longer than one year from the date of charge or arrest).

*Coats*, 981 N.E.2d 1273 (Ind. Ct. App. 2013), *trans. granted*. There, an elderly man with Alzheimer's disease was charged with the sexual battery of his granddaughter. The experts assigned to assess the defendant's competency to stand trial both testified that due to the progressive nature of his dementia, there was little chance of his ever being restored to competency. The trial court designated Coats incompetent and found that he "will not return to competency." *Id*. at 1275. The trial court did not commit him to DMHA and determined that he could continue to reside with his wife. The State did not dispute the finding of incompetence but challenged the trial court's decision not to commit Coats to a DMHA facility, arguing that the mandatory statutory language forecloses any discretion by the trial court to do anything except commit a defendant once it has made an incompetency finding. *Id*. at 1276. The *Coats* majority affirmed the trial court's denial of the State's motion to commit Coats, specifically noting the procedures outlined in the statute, but holding that "the purposes of the competency restoration process cannot be met by following those procedures here." *Id*. at 1278. In her dissent, Judge Riley focused on the delineation of duties outlined in the statute: "The trial court determines whether the defendant is incompetent in the first instance, but the statutory scheme entrusts the ultimate determination on competency to the [DMHA] superintendent, who has not only the skills to make such observations but also the time within which to do so." *Id*. at 1280 (Riley, J., dissenting).[6]

Here, Leedy concedes that "there has not been a finding that [he] is not restorable." Appellant's Br. at 8, n.6. Rather, he asserts that he "must get therapies DMHA cannot

---

[6] Our supreme court heard oral argument on *Coats* on November 7, 2013.

10

provide if there is to be any hope of restoration." *Id*. With respect to the restoration issue, we note the following: (1) the trial court did not make any specific finding concerning Leedy's chances at restoration (assuming arguendo that such a finding would have had any legal effect, given the language of the statute); (2) the expert testimony presented at the competency hearing was conflicting concerning the probability of his restoration (with Dr. Parker stating that he was not optimistic about restoration and Dr. Keglar stating that with a cognitive rehabilitation program, Leedy had a possibility of restored competency within one to two years); (3) beyond the fact that there is no specific language in the statute distinguishing between the various sources of incompetency, i.e., mental illness versus traumatic brain injury, the experts' testimony that the restoration success rate is statistically higher in mental illness patients did not preclude restoration in the cases involving traumatic brain injury; (4) because the trial court stayed its commitment order pending this interlocutory appeal, DMHA has not had Leedy in its care and custody, and as such, has not even had the statutory ninety days during which to evaluate his chances of restoration; and (5) the evidence was inconclusive regarding the effect of any DMHA funding constraints upon Leedy's receipt of therapeutic services necessary to restore his competency (at the competency hearing, Gregory briefly referenced DMHA funding constraints; however, both she and Dr. Meadows testified that it is the duty of DMHA and the assigned facility to ensure that all of Leedy's clinical needs will be met). Tr. at 142, 157.

Simply put, Leedy's due process arguments are based on speculation concerning both DMHA's ability to provide him with the necessary therapeutic services and his own cognitive

11

responses to those services. Essentially, he has asked us to reweigh evidence and make a conclusion that the legislature has specifically delegated to experts in the field of mental competency, a determination that is made after a period of providing services and evaluating the patient/accused. This is precisely why the General Assembly outlined such specific procedures, recognizing the delicate balance that exists between the fundamental fairness owed to the accused and the interests of both the public and the accused in the prompt disposition of criminal charges. Based on the foregoing, we conclude that the commitment statute is not unconstitutional as applied to Leedy and that the trial court did not violate Leedy's due process rights in ordering his commitment to DMHA. Accordingly, we affirm.

Affirmed.

PYLE, J., concurs.

BARNES, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EVAN LEEDY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1303-CR-102 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BARNES, Judge, concurring**

I concur with the majority's analysis. However, I write separately to emphasize and highlight what I believe are inadequacies that our State's mental health system displays here. On the one hand, representatives from Logansport testified that that hospital was capable of providing the "restorative services" that Leedy requires, albeit it would likely require the use of third-party providers outside of the hospital itself. That is because Logansport is better-suited for treatment of mental illness, not traumatic brain injuries. On the other hand, the chief counsel for DMHA testified regarding the "constraints" her agency faces regarding outpatient restorative services. In other words, no or very limited money is available for these services.

13

All agree that the Larue Center in Indianapolis is better-suited to handle the specific type of brain injuries Leedy sustained. I would respectfully, but strongly, suggest that DMHA focus on securing the best and most appropriate treatment for Leedy—wherever that might be. Without providing the best possible services for competency treatment, evaluation, and restoration (if possible), DMHA and the State would possibly be delaying ultimate resolution of this case at the expense of Leedy, his family, the victims, and families of the victims of Leedy's alleged crimes.