Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 15 2014, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF J.C., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 87A01-1403-JV-134 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE WARRICK CIRCUIT COURT
The Honorable David O. Kelley, Judge
Cause No. 87C01-1112-JD-314

September 15, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

J.C. brings this interlocutory appeal to challenge the juvenile court's determination that he is competent to stand trial.[1]  J.C. presents one issue for our review, which we revise and restate as whether the juvenile court's finding that J.C. is competent to stand trial is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 19, 2011, the State filed a juvenile delinquency petition against J.C. alleging that he committed child molesting, as a Class B felony, if committed by an adult. On August 20, 2012, J.C. moved for a psychiatric examination to determine whether he was competent to confront a juvenile adjudication.  Following a hearing on September 20, the juvenile court requested an evaluation by Dr. Sean Samuels, a licensed Clinical Psychologist and Master of Legal Studies.  Dr. Samuels' evaluation of J.C. included a diagnostic interview, mental status examination, juvenile adjudicative competence interview, documentation review, and Wechsler Adult Intelligence Scale.  He noted the "presence of a Pervasive Developmental Disorder (i.e. Autistic Disorder)" and concluded that, at that time, J.C.

> [did] not have the basic capacities associated with competence to stand trial in juvenile court given significant difficulties in the areas of appreciation and understanding of charges, penalties, and pleas; understanding and appreciation of trial participant's roles; ability to assist counsel; and ability to make a decision in his best interest.

Appellant's App. at 16.

---

[1]  J.C. is no longer a minor but remains within the continuing jurisdiction of the juvenile court. See Ind. Code §  31-30-2-1(a).

Based on the conclusion of Dr. Samuels, on February 14, 2013, J.C. moved to dismiss the State's petition. At the conclusion of a hearing on March 14, at which Dr. Samuels testified, the juvenile court took J.C.'s motion under advisement and, on March 28, after finding an additional evaluation necessary, ordered a second evaluation of J.C. by Dr. Willard Whitehead, a psychiatrist. Dr. Whitehead's evaluation of J.C. involved document review, an interview of J.C., a mental status examination, and an assessment of the thirteen McGarry criteria for competency to stand trial.[2] In contrast to Dr. Samuel's opinion, Dr. Whitehead concluded that "the diagnostic criteria for Autism and Asperger's were not met," and he opined that J.C. "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceeding against him." Id. at 30.

The court then held a competency hearing on January 16, 2014, at which Dr. Whitehead testified. Following that hearing, the juvenile court found J.C. competent to stand trial. In relevant part, the court's order stated:

> The standard for competency to stand trial was established by the Supreme Court in Dusky v. United States, 362 U.S. 402[, 402] (1960)[,] with a one word sentence requiring that the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—whether he has a rational as well as factual understanding of the proceedings against him."

* * *

---

[2] The thirteen McGarry criteria, as delineated in Dr. Whitehead's report, are Appraisal of Available Legal Defenses, Unmanageable Behavior, Quality of Relating to Attorney, Planning of Legal Strategy, Appraisal of the Roles of the Principal Participants in the Court Room, Understanding Courtroom Procedure, Appreciation of Charges, Appreciation of Range and Nature of Possible Penalties, Appraisal of Likely Outcome, Capacity to Disclose Available Pertinent Facts, Capacity to Realistically Challenge Prosecution Witnesses, Capacity to Communicate Coherently, and Self-Serving vs. Self-Defeating Motivation. Appellant's App. at 27-30.

3

Dr. Samuels used the Wechsler Adult Intelligen[ce] Scale and a Juvenile Adjudication Comprehensive Interview.

Dr. Whitehead used the "McGarry Criteria" which uses 13 situations to determine competency to stand trial. This assessment tool (CAI) was developed by A. Louis McGarry at the Harvard Medical School.

The Court finds that the McGarry criteria addressed the necessary issues in greater detail and addressed the ultimate question in far greater detail.

For the foregoing reasons, the Court finds that the juvenile has sufficient present ability to consult with his lawyer with a reasonable degree of rational certainty and is therefore competent to stand trial for the allegations of the delinquency petition.

Id. at 32-33. J.C. then filed this interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

J.C. contends that the juvenile court erred when it found him competent to stand trial, and therefore, when it denied his Motion to Dismiss.[3] In In re K.G., 808 N.E.2d 631, 635 (Ind. 2004), our supreme court addressed the issue of competency in juvenile delinquency proceedings as follows:

[A] juvenile alleged to be delinquent has the constitutional right to have her competency determined before she is subjected to delinquency proceedings. A juvenile charged with delinquency is entitled to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. See In re Gault, 387 U.S. 1, 30 (1967). Without question, these include the right to adequate notice of the charges, appointment of counsel, the constitutional privilege against self-incrimination, and the right to confront opposing witnesses. Id. at 31, 34, 39, 41, 42, 56. The cornerstone of these substantive rights is competence to understand the nature of the charge and to assist in a defense. In our view the want of competence renders the other rights meaningless. "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." Id. at 13. "It has long been accepted that a person whose mental condition is such that he lacks the capacity to

---

[3] Because the competence issue is dispositive, we do not address the juvenile court's denial of J.C.'s motion to dismiss.

4

understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975); see also Wallace v. State, 486 N.E.2d 445, 453 (Ind. 1985) ("An accused has a constitutional right not to be tried if he does not have the ability to comprehend the proceedings or to assist in his defense."). Principles of fundamental fairness require that this right be afforded in juvenile proceedings.

Further:

The juvenile court system is founded on the notion of parens patriae, which allows the court the power to step into the shoes of the parents.

\* \* \*

[T]he parens patriae doctrine gives juvenile courts power to further the best interests of the child, which implies a broad discretion unknown in the adult criminal court system.

\* \* \*

In essence the code affords juvenile courts a degree of discretion and flexibility, unparalleled in the criminal code, to address the needs of children and to act in their best interests.

Id. at 635-37.

We review "[d]eterminations of competency to stand trial . . . under the clearly erroneous standard."[4] Edwards v. State, 902 N.E.2d 821, 824 (Ind. 2009). We reverse the juvenile court only if its determination is "unsupported by the facts and circumstances before the trial court together with any reasonable inferences to be drawn therefrom." Id. In finding whether a defendant is competent to stand trial, the trial court, as the trier of

---

[4] We note that J.C. points us to the wrong standard of review (de novo) and, without reference to the case's subsequent history, relies on State v. Coats, 981 N.E.2d 1273 (Ind. Ct. App. 2013), vacated, 3 N.E.3d 528 (Ind. 2014), for support. However, as the preceding citation explains, our supreme court vacated the decision in Coats, which means, of course, that the case is not good law. See Chandler v. Bd. of Zoning Appeals, 658 N.E.2d 80, 80 n.1 (Ind. 1995). In any event, Coats dealt with a specific issue of statutory interpretation that warranted de novo review, which is not present here. See Coats, 3 N.E.3d at 531.

fact, decides what weight is to be given to expert testimony. Ind. Family & Soc. Servs. Admin. v. Hospitality House of Bedford, 783 N.E.2d 286, 292 (Ind. Ct. App. 2003). "We will not reweigh the evidence or judge the credibility of the witnesses when reviewing the trial court's judgment. The relative weight to be accorded conflicting experts rests within the exclusive province of the trial court as the trier of fact and will not be disturbed . . . on review." Id.; see also State v. J.S., 937 N.E.2d 831, 834 (Ind. Ct. App. 2010) ("It was for the juvenile court to assess the credibility of the reports and the parties, weigh the evidence, and reach a conclusion as to competency.").

In light of this standard, we cannot say that the juvenile court's judgment is clearly erroneous. When faced with a competency determination, the court solicited the opinion of Dr. Samuels. After hearing testimony from Dr. Samuels and after submission of his evaluation, the trial court determined that it could not decide the issue without more. Thus, it appointed a second expert, Dr. Whitehead, who also testified and submitted a report. When the experts' opinions conflicted, the court, as the trier of fact, weighed the evidence and assigned greater credibility to the opinion of Dr. Whitehead. Specifically, the juvenile court found that Dr. Whitehead's methods—his use of the McGarry criteria—"addressed the necessary issues in greater detail and addressed the ultimate question in far greater detail." Appellant's App. at 33. Whitehead's assessment supports the court's judgment.

Thus, the juvenile court's judgment is not clearly erroneous. Because its decision is supported by the facts and circumstances before it, including the reasonable inferences

6

drawn therefrom, the juvenile court reasonably exercised its exclusive power to weigh the evidence and assess the credibility of witnesses.  Therefore, we affirm.

Affirmed.

BAILEY, J., and PYLE, J., concur.