ATTORNEY FOR APPELLANT
Steve Carter
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Anna E. Onaitis
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
Gavin M. Rose
Kenneth J. Falk
ACLU of Indiana
Indianapolis, Indiana

In the
Indiana Supreme Court

**FILED**
Dec 18 2008, 1:34 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-0812-CR-657

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

CHARLENE DAVIS,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, Criminal Division, Room 8
No. 49F08-0402-FD-029556
The Honorable Barbara A. Collins, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0706-CR-545

**December 18, 2008**

**Rucker, Justice.**

Today we examine the question of whether it is a violation of fundamental fairness to hold criminal charges over the head of an incompetent defendant who will never be able to stand trial. The answer in this case is yes.

**Facts and Procedural History**

Convinced her savings account was still active and contained a balance of over $300, Charlene Davis walked into a branch of Bank One on February 21, 2004, demanding a withdrawal. Becoming upset when told her account was closed, Davis produced a knife and began waiving it in the air. Bank employees activated a silent alarm and police officers arrived on the scene. When Davis ignored demands to drop the knife, an officer released a stream of CS spray to her face. Distracted, Davis was pushed to the floor and subdued. She was arrested and thereafter charged in Marion Superior Court with criminal recklessness as a Class D felony.

On April 21, 2004, counsel on Davis' behalf filed a Motion for Competency Evaluation alleging, among other things, that she "has reason to believe that Defendant may be unable to assist counsel in preparation for her trial and may be unable to understand the nature of the proceedings against her." App. at 19. The trial court granted the motion and appointed two psychiatrists to conduct the evaluations, Dr. Ned Mausbaum and Dr. Dwight Schuster. They did so on different days in May 2004 while Davis was in custody at the Marion County Jail. Both concluded that she was suffering from paranoid schizophrenia and was not competent to stand trial. Dr. Mausbaum also opined that Davis was of unsound mind at the time of the offense and was not able to appreciate the wrongfulness of her conduct.[1] Supp. App. at 8. As a consequence, on May 24, 2004 the trial court ordered Davis committed to the Division of Mental Health and Addiction ("DMHA") to be confined in an appropriate psychiatric institution. App. at 26.

Davis was transferred to Evansville State Hospital on June 10, 2004. On August 20, 2004, staff psychiatrist Dr. Brad Mallory evaluated Davis and diagnosed her as suffering from "Psychotic Disorder, Not Otherwise Specified" and concluded, among other things, "I do *not*

---

[1] Upon receipt of the doctors' reports counsel also filed a Notice of Insanity Defense. App. at 28.

believe there is a substantial probability that she will attain the ability to assist in the preparation of her defense in the foreseeable future." Supp. App. at 16 (emphasis in original). In a letter to the trial court accompanying the doctor's report, the hospital's superintendent advised the court that "[a] Petition for a Regular Commitment will be filed in Vanderburgh Superior Court." Supp. App. at 17. The petition was filed and granted on September 3, 2004.

Although the record tells us nothing about why or when, at some point between September 3, 2004, and March 1, 2007, Davis was transferred from Evansville State Hospital to Larue D. Carter Memorial Hospital.[2] In a letter to the trial court dated March 1, 2007, Dr. Beth Pfau, Larue Carter's Chief Medical Officer, advised the court among other things, "It is my psychiatric opinion that [Davis] cannot be restored to competence . . . . I believe she is too guarded and paranoid to ever be able to work with her legal counsel." App. at 32.

On March 27, 2007, counsel on behalf of Davis filed a motion to dismiss the charges pending against her arguing that Davis' hospitalization was tantamount to incarceration and that Davis had already accrued more days than the maximum possible confinement she could receive should she eventually be convicted. After a hearing the trial court granted the motion. The State appealed and the Court of Appeals reversed the judgment of the trial court. State v. Davis, 875 N.E.2d 779 (Ind. Ct. App. 2007). We now grant transfer and affirm the trial court's judgment.

**Discussion**

**I.**

Due process precludes placing a defendant on trial while she is incompetent. Drope v. Missouri, 420 U.S. 162, 171 (1975); see also Wallace v. State, 486 N.E.2d 445, 453 (Ind. 1985) ("An accused has a constitutional right not to be tried if he does not have the ability to comprehend the proceedings or to assist in his defense.") (citation omitted). In this jurisdiction the test for determining competency is "whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding, and whether the

---

[2] We note that both hospitals are under the jurisdiction of the State Division of Mental Health and Addiction. Evansville State Hospital is located in the city of Evansville, and Larue D. Carter Memorial Hospital is located in the city of Indianapolis.

defendant has a rational as well as a factual understanding of the proceedings against him." Adams v. State, 509 N.E.2d 812, 814 (Ind. 1987) (citations omitted). To protect a defendant's due process right not to be placed on trial while incompetent, Indiana Code § 35-36-3-1 provides:

> (a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested: psychiatrists; psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology. At least one (1) of the individuals appointed under this subsection must be a psychiatrist . . . . The individuals who are appointed shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense. (b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it shall delay or continue the trial and order the defendant committed to the division of mental health and addiction . . . .

I.C. § 35-36-3-1 (2004). Within ninety days after the defendant has been committed due to the lack of competency to stand trial, the superintendant of the institution where the defendant is committed is required to certify to the trial court whether the defendant has a substantial probability of attaining competency within the foreseeable future. Ind. Code § 35-36-3-3 (2004). If such probability does not exist, then the DMHA must initiate regular commitment proceedings under Indiana Code § 12-26-7-1 (2004).

The question presented in this case concerns the disposition of pending criminal charges when it becomes apparent the defendant is unlikely ever to regain competency to stand trial. Davis contends the Fourteenth Amendment Due Process Clause dictates that her charges should be dismissed as a matter of law. Appellee's Br. at 2-3. The State counters, "No statute or rule

gives the trial court the authority to dismiss criminal charges due to a defendant's continued incompetency." Appellant's Br. at 4.

Abuse of discretion is the appropriate standard for appellate review of a trial court's decision to dismiss a charging information. Sivels v. State, 741 N.E.2d 1197, 1202 (Ind. 2001). Indiana Code § 35-34-1-4 (2004) provides a non-exclusive list of reasons allowing dismissal of an indictment or information. At least two of the reasons are constitutionally based: "The prosecution is barred by reason of a previous prosecution [addressing the Fifth Amendment prohibition on double jeopardy] . . . ," I.C. § 35-34-1-4(a)(7), and "The defendant has been denied the right to a speedy trial [addressing the Sixth Amendment right to a speedy trial] . . . ," I.C. § 35-34-1-4(a)(9). One of the reasons is open ended: "Any other ground that is a basis for dismissal as a matter of law." I.C. § 35-34-1-4 (a)(11).

First, courts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights. Subsections (a)(7) and (a)(9) are merely a legislative recognition of this authority. Second, the open ended catchall provision of subsection (a)(11) is recognition that there may be additional reasons for the dismissal of criminal charges. A violation of a defendant's constitutional right to due process certainly fits in that category. This of course raises the underlying questions in this case, namely whether any such right exists here and if so whether it has been violated.[3]

Jackson v. Indiana, 406 U.S. 715 (1972), is instructive. In that case the United States Supreme Court considered the constitutionality of a prior version of Indiana's statutes for pre-trial commitment of a criminal defendant. The defendant was mentally retarded, suffered a

---

[3] Although Davis does not concede a violation of her right to a speedy trial, see Appellee's Br. at 6 n.1 ("Davis makes no concession with regard to her right to a speedy trial as protected by the Sixth and Fourteenth Amendments to the United States Constitution or to her right to due course of law as guaranteed by Article I, Section 12 of the Indiana Constitution."), Davis advances no argument and makes no claim on appeal that her right to a speedy trial has in fact been violated. We decline therefore to address the issue except to note in passing that Indiana Criminal Rule 4 exists to aid in implementing an accused's right to a speedy trial as provided in the constitutions of both Indiana and the United States. McQueen v. State, 711 N.E.2d 503, 504 (Ind. 1999). And this Court has long held that in the context of Indiana Criminal Rule 4, the delays resulting from the claim of incompetency and the period of time that it takes to regain competency to stand trial are not charged against the State. Baldwin v. State, 411 N.E.2d 605, 606 (Ind. 1980); Flewallen v. State, 267 Ind. 90, 368 N.E.2d 239, 241 (1977).

hearing disability, and could communicate only to a limited extent through sign language. Id. at 717. After the defendant was indicted on two counts of robbery, the trial court found him incompetent to proceed and committed him to the State Department of Mental Health until sane. Id. at 719. Defendant contended that, practically speaking, this was a commitment for life since he would never attain the competence required for trial. But this Court affirmed over the dissent of Justice DeBruler. Jackson v. State, 253 Ind. 487, 255 N.E.2d 515, 518 (1970) (DeBruler J., dissenting.) On certiorari, the Supreme Court adopted Justice DeBruler's dissent and held that the defendant had been deprived of equal protection because the statutes subjected criminal defendants to a more lenient commitment standard and a more stringent release standard than persons not charged with crimes. Jackson, 406 U.S. at 730. The Court likewise concluded that the indefinite commitment of a criminal defendant solely because he lacked the capacity to proceed deprived him of equal protection and due process. Id. at 730-31, 738.

The Court thus held that a person charged with a criminal offense who is committed solely on account of his incompetency to proceed to trial "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." Id. at 738. However, Jackson made it clear that a state cannot continue to confine the defendant under its criminal commitment statutes if it is unlikely that the defendant ever will attain competency. When the determination is made that there is no substantial probability that the defendant will be restored to competency, "the State must *either* institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, *or* release the defendant." Id. (emphasis added).[4]

Having determined Jackson's indefinite commitment amounted to a violation of both equal protection and due process, the Court turned its attention to Jackson's claim that the charges against him must be dismissed. Id. at 739. Although it labeled Jackson's claim "substantial," the Court concluded the claim was "not sufficiently ripe for ultimate decision." Id.

---

[4] In apparent response to Jackson the Legislature amended Indiana's criminal commitment statutes to provide for regular civil commitment proceedings where there is no probability of the defendant attaining competency within the foreseeable future. Act of Feb. 18, 1974, Pub.L. No. 148, § 1 (codified at Ind. Code § 35-5-3.1) (repealed 1981) (current version at Ind. Code § 35-36-3-3) (added by Act of May 5 1981, Pub.L. No. 298, § 5; amended by Act of Feb. 14, 1992, Pub.L. No. 2-1992 § 873, Act of May 11, 2001 Pub.L. No. 215-2001 § 111, Act of March 17, 2004, Pub.L. No. 77-2004 § 7).

at 739.  In a passage particularly relevant to the case before us the Court noted, "Dismissal of charges against an incompetent accused has usually been thought to be justified on grounds not squarely presented here: particularly, the Sixth-Fourteenth Amendment right to a speedy trial, or the denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence."  Id. at 740 (footnote omitted).  However, the Court declined to consider the issue because it was neither presented to, nor ruled upon, by the Indiana courts.  Id.  Thus, nearly four decades after Jackson was decided we are squarely presented with the question the United States Supreme Court left unresolved.

## II.

The Fourteenth Amendment to the United States Constitution requires that no person shall be deprived of life, liberty, or property without due process of law and equal protection of the laws.  However, "[f]or all its consequence, 'due process' has never been, and perhaps can never be, precisely defined."  Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 24 (1981).  As the United States Supreme Court has observed, unlike some other legal rules, due process "is not a technical conception with a fixed content unrelated to time, place and circumstances."  Id. at 24 (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)).  Instead, "the phrase expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty."  Lassiter, 452 U.S. at 24.  Accordingly, "[a]pplying the Due Process Clause is thus an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake."  Id. at 24-25.

There is no relevant precedent in this state on the question of whether there is an inherent denial of due process in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove her innocence.  And the jurisdictions that have considered the dismissal of criminal charges against incompetent defendants have done so on the basis of statutory authority or court rule.[5]  For example, in some states a trial court must dismiss the

---

[5] Our research reveals one decision that referenced a due process claim, however it provided no analysis because the court did not reach the issue.  See Commonwealth v. Miles, 816 S.W.2d 657, 659-60 (Ky. Ct.

7

charges if it determines that the defendant will probably remain incompetent to proceed.  See, e.g., Mo. Ann. Stat. § 552.020.11(6) (West 2002); Mont. Code Ann. § 46-14-221(3)(b) (2007).  In other states, dismissal of criminal charges is discretionary.  See, e.g., Ark. Code Ann. § 5-2-310(C) (Supp. 2007); Haw. Rev. Stat. § 704-406 (3) (Supp. 2007).  In still others, the trial court must dismiss the charges against an incompetent defendant in some circumstances, whereas dismissal is discretionary in others.  See Minn. R. Crim. P. 20.01(6) (providing that criminal proceedings must be dismissed if the prosecuting attorney has not filed a notice of intention to prosecute the defendant when he has been restored to competency unless the defendant is charged with murder); N.J. Rev. Stat. § 2C:4-6c (2005) (providing that if the defendant has not regained her fitness to proceed within three months, the court shall hold a hearing to determine whether pending charges shall be dismissed with prejudice or held in abeyance).

Absent relevant case authority in this area of the law we turn our attention to the interests at stake.[6]  As for Davis, the interest is basic and fundamental, "a massive curtailment of liberty."  Humphrey v. Cady, 405 U.S. 504, 509 (1972).  Involuntary commitment to a hospital for the mentally ill is clearly such a deprivation of liberty as can only be accomplished by a state in strict

_____

App. 1991) (agreeing with the "implication" of Jackson, "that it would be a denial of due process to maintain criminal charges indefinitely against a defendant who never has a chance, because of his incompetency, to establish his innocence through a trial," but distinguishing the facts as not applicable in that case).  But see People v. Zapotocky, 869 P.2d 1234, 1242 (Colo. 1994) (expressing the view that "dismissal of criminal charges against incompetent defendants is a legislative choice and is not constitutionally compelled.").  In another decision, Justice Harlan, in a separate opinion reversing a conviction on grounds of a speedy trial violation, declared, "I would rest decision of this case not on the 'speedy trial' provision of the Sixth Amendment, but on the ground that this unusual [State] procedure, which in effect allows state prosecuting officials to put a person under the cloud of an unliquidated criminal charge for an indeterminate period, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment."  Klopfer v. North Carolina, 386 U.S. 213, 226-27 (1967) (Harlan, J., concurring in result).  Again, no analysis was provided.

[6] Amicus contends that in Indiana a patient against whom criminal charges are pending is prohibited from alternative placement otherwise available to a civilly committed patient.  According to Amicus this prohibition alone results in a due process violation.  See Br. of Amicus ACLU of Indiana at 3.  We decline to pursue this line of analysis for at least two reasons.  First, the statute on which Amicus relies is based on a determination of incompetency rather than the pendency of criminal charges.  See Ind. Code § 12-24-19-1(b)(2) ("This chapter [Community Care for Individuals with Mental Illness] does not apply to any of the following: . . . an individual who is incompetent to stand trial.").  And where, as here, competency has not been restored within six months, civil commitment proceedings are then undertaken.  Second, the record before us contains no information about the status of Davis' civil commitment other than the fact that she is confined.  We thus have no way to evaluate the impact, if any, of the pending criminal charges on possible alternative placement options.

observation of requirements of due process. As Chief Justice Burger observed in his concurring opinion in O'Connor v. Donaldson, 422 U.S. 563, 580 (1975), an action concerning the civil commitment process, "Commitment must be justified on the basis of a legitimate state interest, and the reasons for committing a particular individual must be established in an appropriate proceeding. Equally important, confinement must cease when those reasons no longer exist."

In the civil commitment context, justification is predicated on the State's interest in the protection of the public under the police power and the protection of the mentally ill person under the *parens patriae* doctrine, and requires a finding that the subject of the commitment proceeding is either dangerous to herself or others or unable to live safely in freedom. Id. at 575. This jurisdiction has a slightly different formulation, but the principle is the same. See Ind. Code § 12-26-7-5 (2007) (providing civil commitment where person is "mentally ill and either dangerous or gravely disabled"). Justification for the commitment of an incompetent accused is found in the State's interest in the restoration of the accused to competency because of the right of the public and the defendant to the prompt disposition of criminal charges pending against him, Strunk v. United States, 412 U.S. 434, 439 n.2 (1973), and the protection of the accused against being required to answer to charges that she lacks the capacity to understand or to assist her attorney in defending against. Drope, 420 U.S. at 171. Commitment of an accused thus focuses on the State's interest in the accused's restoration to competency and necessarily entails a finding of probability that the accused can be so restored. In this case, however, restoration to competency is not possible.

Davis was charged with criminal recklessness as a Class D felony. The maximum term of imprisonment for a Class D felony is three years. Ind. Code § 35-50-2-7 (Supp. 2008). Under Indiana Code § 35-50-6-3(a) a person earns "one (1) day credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing." And confinement in this context includes time a criminal defendant spends in a mental health facility as a part of the criminal proceedings. See Wilson v. State, 679 N.E.2d 1333, 1336 (Ind. Ct. App. 1997). Here, since May 2004 Davis has been confined to a psychiatric institution under the jurisdiction of the DMHA. Even if Davis were to recover competency and then be tried and convicted of the charged offense, any incarceration she could receive would have to be reduced by the time spent

9

in Evansville and Larue Carter State Hospitals. Thus, because of credit time, Davis became immune from being sentenced to further confinement as of November 2006 by which time she had been confined for a total of eighteen months.

As things now stand Davis remains in the custody of the DMHA under a civil commitment order because she is mentally ill and either "dangerous" or "gravely disabled." I.C. § 12-26-7-5(a). Ordinarily a patient who is no longer dangerous or gravely disabled is eligible for release from custody. I.C. § 12-26-7-5(b). But the statute is silent concerning the status of a commitment order from the criminal court after a defendant has been civilly committed. In essence even though a civilly committed patient can be released if she is no longer dangerous or gravely disabled, the statute says nothing about whether the patient is eligible for release where the original commitment order was based on incompetency to stand trial.

We can conceive of a number of instances in which the State would have some legitimate interest in determining the guilt or innocence of an accused even though the accused, in effect, had already been punished. For example, a conviction would be required to enhance a sentence for a felony committed as a member of a criminal gang, see Ind. Code § 35-50-2-15 (Supp. 2008), to prohibit possession of a firearm, see Ind. Code § 35-47-4-5 (Supp. 2008), to require registration as a sex offender, see Ind. Code § 11-8-8-5 (2008); Ind. Code § 11-8-8-7 (Supp. 2008), or to prove status as a habitual offender, see Ind. Code § 35-50-2-8 (Supp. 2008), a habitual substance offender, see Ind. Code § 35-50-2-10 (Supp. 2008), or a habitual traffic offender, see Ind. Code § 9-30-10-4 (2004). If any one or more of these interests were present, then it would be necessary to determine whether such interest or interests were sufficiently important to overcome an accused's substantial liberty interest.

In this case however the State makes no claim that any of the cited examples are applicable. Nor does the State otherwise argue on appeal that there is any substantial public interest to be served by the determination of Davis' guilt or innocence now that she may no longer be required to serve any further confinement. We also observe that the indefinite prolonging of criminal charges carries the very real likelihood of subjecting Davis to the "anxiety and scorn accompanying public accusation," such that the trial court's action may be supported.

10

<u>Klopfer</u>, 386 U.S. at 222 (footnote omitted) (reversing conviction based on speedy trial violation).

## Conclusion

Because Davis' pretrial confinement has extended beyond the maximum period of any sentence the trial court can impose, and because the State has advanced no argument that its interests outweigh Davis' substantial liberty interest, we conclude it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial.

The trial court did not abuse its discretion in granting Davis' motion to dismiss. We therefore affirm the trial court's judgment.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.