ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Darren Bedwell
Ruth Ann Johnson
Indianapolis, Indiana



FILED

Feb 18 2014, 11:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1305-CR-328

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

WILLIAM COATS,

*Appellee (Defendant below).*

Appeal from the Marion Superior Court, No. 49F08-1004-FD-30232
The Honorable Barbara Collins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1206-CR-526

**February 18, 2014**

**David, Justice.**

Following his arrest for class D felony sexual battery, sixty-seven-year-old William Coats filed a motion for a competency determination. Doctors evaluating Coats diagnosed him with dementia, concluded he was not competent to stand trial, and predicted he could not be restored to competency. Based on the doctors' reports, the trial court found that Coats was not competent to stand trial and that Coats could not be restored to competency. Subsequently, the State moved

to commit Coats to the Division of Mental Health and Addiction ("DMHA") pursuant to Ind. Code chapter 35-36-3, Indiana's Comprehension to Stand Trial statutes. The trial court denied the State's motion, and this interlocutory appeal ensued. Because we hold that Ind. Code § 35-36-3-1(b) requires trial courts to commit defendants found not competent to stand trial to the DMHA for competency restoration services, we remand this case to the trial court with an order to commit Coats to the DMHA.

## Facts and Procedural History

On April 15, 2010, the State charged Coats with class D felony sexual battery. The alleged victim was his granddaughter. Born in 1943, Coats has been diagnosed with Alzheimer's disease.

After pleading not guilty at an initial hearing, Coats posted bond. He has since remained released on bond. On January 27, 2011, Coats filed a Motion for Psychiatric Examination to Determine Comprehension to Stand Trial. In order to determine Coats's competency to stand trial, psychiatrist Dr. George Parker and psychologist Dr. Stephanie Callaway met with Coats for approximately one hour. Issuing separate written reports to the trial court, Drs. Parker and Callaway concluded that Coats suffered from dementia, a progressive disease, and as a result was not competent to stand trial. Additionally, Dr. Parker opined that Coats would not be able to be restored to competency, and Dr. Callaway predicted "little likelihood" that Coats would be able to be restored to competency.

Based on the doctors' reports and without a hearing, on February 8, 2012, the trial court found Coats not competent to stand trial. In addition, the trial court found that Coats could not be restored to competency, and that he was not a public safety risk. On February 29, 2012, the State filed a written request to commit Coats to the DMHA pursuant to Ind. Code § 35-36-3-1(b). Filing a motion to dismiss the charge against him, Coats argued that since he cannot be restored

2

to competency, commitment would violate his rights to due process and equal protection under the Fourteenth Amendment. On June 15, 2002, the trial court denied both the State's and Coats's motions.

The State then requested that the denial of its motion be certified for interlocutory appeal, and the trial court granted the State's request. Before the Court of Appeals, the State contended that the trial court erred by refusing to commit Coats to the DMHA after it found him not competent to stand trial because Ind. Code § 35-36-3-1(b) unambiguously required the trial court to commit the defendant to the DMHA for competency restoration services. In response, Coats maintained that the State may not detain a defendant found not competent to stand trial for competency restoration services once the trial court has determined that the defendant cannot be restored to competency.

In a split opinion, the Court of Appeals affirmed the trial court's denial of the State's motion to commit Coats to the DMHA. State v. Coats, 981 N.E.2d 1273, 1279 (Ind. Ct. App. 2013). Dissenting, Judge Riley reasoned that "the statute does not give the trial court discretion to decline to order commitment even where it concludes that the defendant could never be restored to competency." Id. at 1279–80 (Riley, J., dissenting). The State petitioned this Court for transfer, which we granted, thereby vacating the opinion below. Ind. Appellate Rule 58(A).

## I.      Indiana Code Chapter 35-36-3

One issue is contested here: whether a trial court has discretion to refuse to order commitment to the DMHA where it concludes that a defendant found not competent to stand trial can never be returned to competency. This issue presents a question of statutory interpretation subject to de novo review. Pinnacle Prop. Dev. Grp., LLC v. City of Jeffersonville, 893 N.E.2d 726, 727 (Ind. 2008). "In the interpretation of statutes, our goal is to determine and give effect to the intent of the legislature in promulgating it. Our primary

3

resource for this determination is the language used by the legislature, and thus our interpretation begins with an examination of the statute's language." Porter Dev., LLC v. First Nat. Bank of Valparaiso, 866 N.E.2d 775, 778 (Ind. 2007). Where the statute's language is unambiguous, we read each word in the "plain, ordinary, and usual sense." Id.

When a defendant files a motion for a competency determination, the trial court must follow the procedures of Ind. Code chapter 35-36-3. Under Ind. Code § 35-36-3-1(a) (Supp. 2013), if the trial court "has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense," then the trial court shall appoint two or three "competent, disinterested" psychiatrists, psychologists, or physicians "who have expertise in determining competency." At least one of the appointed individuals must be a psychiatrist or psychologist.[1] Id. "The individuals who are appointed shall examine the defendant . . . as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense." Id.

Following the competency evaluation, Ind. Code § 35-36-3-1(b) provides, in pertinent part:

> [i]f the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it *shall* delay or continue the trial and *order the defendant committed to the division of mental health and addiction.* The division of mental health and addiction shall provide competency restoration services.

(emphasis added).

---

[1] The statute further provides that the psychologists must be "endorsed by the Indiana state board of examiners in psychology as health service providers in psychology." Ind. Code § 35-36-3-1(a).

4

Within ninety days of the defendant's admission to a state institution for competency restoration services, the superintendent of the state institution

> shall certify to the proper court whether the defendant has a substantial probability of attaining the ability to understand the proceedings and assist in the preparation of the defendant's defense within the foreseeable future. . . . If a substantial probability does not exist, the state institution . . . shall initiate regular commitment proceedings under IC 12-26. If a substantial probability does exist, the state institution . . . shall retain the defendant: (1) until the defendant attains the ability to understand the proceedings and assist in the preparation of the defendant's defense and is returned to the proper court for trial; or (2) for six (6) months from the date of the . . . defendant's admission to a state institution . . . whichever first occurs.

Ind. Code § 35-36-3-3 (2008). If a defendant found to have a substantial probability of attaining competency does not do so within six months of admission, then the state institution shall institute regular commitment proceedings under Ind. Code article 12-26. Ind. Code § 35-36-3-4 (2008).

The language of Ind. Code §§ 35-36-3-1,-3, and -4 is unambiguous. Giving each word its plain meaning, it is clear that the legislature intended the trial court and the superintendent to have clear responsibilities and separate duties in determining a defendant's competency to stand trial: the trial court initially determines whether the defendant is competent to stand trial, and if he or she is not currently competent, then the superintendent of the state institution—after providing services aimed at restoring competency—determines whether the defendant has a substantial probability of attaining competency within the foreseeable future. Plainly, the statute does not give trial courts discretion to refuse to commit a defendant once it determines that he or she is not competent to stand trial.

5

Accordingly, by finding Coats not competent to stand trial but denying the State's motion to commit him to the DMHA for competency restoration services, the trial court here did not follow Ind. Code § 35-36-3-1(b). Although the trial court had no discretion to refuse to commit Coats, our analysis does not end here, for Coats does not dispute the plain meaning of the statute. Rather, he argues that regardless of the statutory scheme, the State may not detain a defendant found not competent to stand trial for competency restoration services once the trial court has determined that the defendant cannot be restored to competency.

## II.     Case Law

In support of his contention that defendants deemed unable to be restored to competency by a trial court may not be committed for futile competency restoration services, Coats cites Jackson v. Indiana, 406 U.S. 715 (1972), State v. Davis, 898 N.E.2d 281 (Ind. 2008), and Curtis v. State, 948 N.E.2d 1143 (Ind. 2011). As set forth below, none of these cases support Coats's position.

### A.     Jackson v. Indiana

First, we reject Coats's claim that Jackson controls the outcome here. Found not competent to stand trial, Jackson was committed to the Department of Mental Health until the Department could certify that he was "sane." 406 U.S. at 719. At the time, Indiana had "no statutory provision for periodic review of the defendant's condition by either the court or mental health authorities." Id. at 720. Concluding that the defendant's commitment violated his due process rights, the United States Supreme Court held that a person charged with a criminal offense "who is committed solely on account of his incapacity to proceed to trial cannot be held *more than the reasonable period of time* necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." 406 U.S. at 731, 738 (emphasis added).

We agree with the Court of Appeals that "[t]he statutes at issue here do not raise the same concerns that the court addressed in Jackson." Coats, 981 N.E.2d at 1277. Here, Ind. Code § 35-36-3-3(a) sets an absolute limit to the length of time the DMHA can take in determining whether there is a substantial probability that a defendant will attain competency: the superintendent of the state institution must report the defendant's status to the trial court within *ninety days* of the defendant's admission to the DMHA. Indeed, the Jackson holding likely prompted the legislature to implement a specific time limit for the DMHA's determination.

At no point in his briefs or at oral argument did Coats claim that ninety days was an unreasonable period of time for the DMHA's ascertainment of future competency. Thus, Coats cannot rely upon Jackson for his assertion that defendants deemed unable to be restored to competency by a trial court may not be committed for any length of time.

### B.    State v. Davis

In Davis, the trial court found the defendant not competent to stand trial and subsequently ordered her committed to the DMHA.[2] 898 N.E.2d at 284. A staff psychiatrist at the Evansville State Hospital evaluated Davis and did not believe there to be a substantial probability that she would attain competency, and the trial court granted the hospital's petition for regular commitment. Id. Asserting that her hospitalization was tantamount to incarceration and exceeded the maximum sentence for the charges she still faced, Davis moved to dismiss the charges against her. Id. We examined the justifications for committing to the DMHA a defendant the trial court found not competent to stand trial.

> Justification for the commitment of an incompetent accused is
> found in the State's interest in the restoration of the accused to

---

[2] Although Ind. Code chapter 35-36-3 was the statutory scheme under which Davis was found not competent to stand trial and committed to the DMHA, the opinion does not specifically cite this chapter.

> competency because of the right of the public and the defendant to the prompt disposition of criminal charges pending against him, and the protection of the accused against being required to answer to charges that she lacks the capacity to understand or to assist her attorney in defending against.

Id. at 289 (internal citations omitted).  It followed that "[c]ommitment of an accused thus focuses on the State's interest in the accused's restoration to competency and necessarily entails a finding of probability that the accused can be so restored."  Id.

Ultimately, we affirmed Davis's motion to dismiss the charges against her, because (1) Davis's pretrial confinement in psychiatric institutions exceeded the maximum sentence the trial court could have imposed; and (2) the State advanced no argument that its interests outweighed Davis's liberty interest.  Id. at 290.  These specific circumstances led us to conclude that "it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of Davis, an incompetent defendant, when it is apparent she will never be able to stand trial."  Id.

Coats argues that since he suffers from a progressive disease and will never regain competency, fundamental fairness forbids the sexual battery charge being held over his head. For Coats, Davis is also significant for the proposition that commitment "necessarily entails a finding of probability that the accused can be so restored."  Id. at 289.  But as set forth below, Coats fails to understand a central lesson of Davis: the importance of a proper finding that a defendant's competency cannot be restored.

### C.     Curtis v. State

Born with a developmental disability, Curtis was fifty-nine years old at the time of his arrest.  Curtis, 948 N.E.2d at 1146.  After a court-ordered competency examination, doctors concluded that Curtis suffered from dementia and was not competent to stand trial.  Id.  One

8

doctor stated that Curtis would never be restored to competency, while the other posited that restoration was unlikely. Id. Moving to dismiss the charges against him, Curtis argued that the charges "violate[d] his due process right to fundamental fairness because he is incompetent and unlikely to regain competency." Id.

In our analysis, we emphasized the importance of following the procedure set forth in Ind. Code chapter 35-36-3, as "[s]tatutes control the appropriate way to determine a defendant's competency and, if necessary, to commit the defendant and provide restoration services." Id. at 1153. Referring to Ind. Code chapter 35-36-3 and the justifications in Davis for committing a defendant found not competent to stand trial, we stated that

> [t]he procedures establish a comprehensive method that balances the various interests at stake. Involuntary commitment is a clear deprivation of the defendant's liberty interest that can be justified only on the basis of legitimate state interests. . . . the State's interests cannot be realized if there is a *finding* that a defendant cannot be restored to competency.

Id. at 1153–54 (emphasis added).

Under the facts before us, we determined that Curtis did not have a valid due process claim because "the trial court neither has found Curtis incompetent under Indiana Code section 35-36-3-1 nor has committed him. Accordingly, there has been *no opportunity for a proper finding that Curtis will never be restored to competency* as there was in Davis." Id. at 1154 (emphasis added).

Coats seizes upon the language that "the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency." Id. at 1153–54. And he is correct— the State's interest in the restoration of an accused to competency cannot be realized if there is a finding that such restoration is not substantially probable in the foreseeable future. However, as

9

we stated in <u>Curtis</u> and stress below, this finding must be properly made.  Statutorily, this is the responsibility of the DMHA, not the trial court.

### D.    Coats

Critical in <u>Davis</u>, <u>Curtis</u>, and here is a proper finding that a defendant's competency to stand trial will never be restored.  Through the plain language of Ind. Code § 35-36-3-3, the legislature entrusts only the superintendent of the state institution where the defendant has been committed with the power to determine that the defendant does not have a substantial probability of attaining competency to stand trial within the foreseeable future.  The legislature's choice is deliberate, as it is the DMHA's experts who observe and work with the committed defendant for up to ninety days.  Compared to court-appointed doctors that meet with the defendant for an hour, the DMHA experts have more time and vastly more information upon which to base their decision.[3]

At oral argument, Coats asserted that it would violate his due process rights to be committed for up to ninety days after the trial court determined that he would not regain competency.  However, Coats misunderstands the significance of <u>Davis</u> and <u>Curtis</u>: until the proper statutory procedure is followed, *he will not know*, under the law, whether he has a substantial probability of attaining competency.  Just as Coats is correct to claim that, under <u>Curtis</u>, "the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency," he is mistaken to conclude that the trial court can properly make this finding.   948 N.E.2d at 1154.   The legislature has reserved that authority to the DMHA; therefore, the authority to find that a defendant cannot be restored to competency rests alone with

---

[3] We stress that under the plain language of Ind. Code § 35-36-3-1(a), the court-appointed doctors determine competency at the time of the defendant's evaluation, not the likelihood of whether the defendant will attain competency in the future.

the superintendent of the state institution where the defendant has been—or should have been—committed.

Coats also argues that "[c]ommitment of an accused . . . *necessarily entails a finding of probability that the accused can be so restored*." (Coats's Br. at 10 (quoting <u>Davis</u>, 898 N.E.2d at 289).) Again, the plain language of Ind. Code § 35-36-3-1(b) mandates that the trial court, upon finding the defendant not competent to stand trial, commit the defendant to the DMHA for competency restoration services. Until the DMHA has the opportunity to observe and evaluate the defendant, the State's interest in the restoration of the accused to competency cannot be vindicated. Moreover, the extent to which restoration of the defendant's competency is probable cannot be known until *after* the defendant has been committed and treated by the DMHA's experts, as it is the commitment of the accused that facilitates the DMHA's finding of whether the defendant has a substantial probability of attaining competency within the foreseeable future.

From the plain language of Ind. Code § 35-36-3-1(b), there are two possible results from a competency hearing: the first is that the trial court finds the defendant competent to stand trial, and the trial proceeds accordingly; the second is that the trial court finds the defendant not competent to stand trial and orders the defendant committed to the DHMA for competency restoration services. But Coats contends that there are three possible determinations a trial court can make: (1) the defendant is competent to stand trial; (2) the defendant is currently not competent to stand trial but may attain competency in the future; or (3) the defendant is currently not competent to stand trial and will never attain competency in the future. We cannot read his third option into the statute. As evidenced by Ind. Code § 35-36-3-1(b)'s unambiguous language, the legislature did not intend for trial courts to determine a defendant's future competency. By finding Coats not competent to stand trial but refusing to order commitment, the trial court did not follow the law as it is written.

11

In all likelihood, the trial court here was motivated by the probability that Coats, at the time nearly seventy years old and suffering from Alzheimer's disease, is unlikely to ever be competent to stand trial. Although the trial court had the best of intentions, it was bound to follow Ind. Code chapter 35-36-3 and had no discretion to substitute its determination as to whether Coats would eventually attain competency for that of the superintendent of the state institution where he should have been committed. Only by following the strict statutory framework set forth by the legislature in Ind. Code chapter 35-36-3 can both the interests of the State and Coats be protected.

## Conclusion

We therefore remand this case to the trial court with an order to commit Coats to the DMHA for competency restoration services.

Dickson, C.J., Rucker, Massa, and Rush, J.J., concur.