

**FILED**

Aug 14 2015, 6:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Michael J. Kyle | Gregory F. Zoeller |
| Baldwin Kyle & Kamish | Attorney General of Indiana |
| Franklin, Indiana | |
| | Monika Prekopa Talbot |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

I N   T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Gross, | August 14, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 41A01-1411-CR-467 |
| v. | Appeal from the Johnson Superior Court |
| State of Indiana, | The Honorable Cynthia S. Emkes, Judge |
| *Appellee-Plaintiff,* | Cause No. 41D02-0302-FB-1 |

**Robb, Judge.**

# Case Summary and Issues

[1] Charles Gross was arrested on February 28, 2003, on charges of child molesting, a Class B felony, and dissemination of matter harmful to a minor, a Class D felony. He has never been tried on these charges, however, as he was found to be incompetent and has been either incarcerated in Johnson County or

confined by the State Division of Mental Health and Addiction ("DMHA") since his arrest. In August 2014, Gross filed a motion to dismiss the charges against him and a request for release from custody because he had been confined for a period of time equivalent to the maximum sentence he could have to serve if convicted. The trial court denied his motion, finding Gross was subject to the credit restricted felon statute and therefore had not yet been confined for the maximum time allowed by law.

Gross appeals the trial court's denial of his motion to dismiss the charges pending against him and release him from custody. He raises two issues: 1) whether the trial court erred in finding he was subject to the credit restricted felon statute; and 2) whether the trial court abused its discretion in denying his motion because due process requires the charges to be dismissed. The State concedes that Gross is not subject to the credit restricted felon statute and has been confined for the maximum time allowed by law but argues the charges should not be dismissed. We conclude the parties are correct that Gross is not subject to the credit restricted felon statute and has therefore been confined for the equivalent of the maximum sentence he could have been ordered to serve. In addition, because there has been a finding that it is unlikely Gross will ever be restored to competency, it is a violation of due process for the underlying criminal charges to continue to pend against him. The trial court abused its discretion in denying Gross's motion to dismiss, and we therefore reverse.

# Facts and Procedural History

[3] In early 2003, the Edinburgh Police Department investigated a report that Gross had molested a young male cousin and had shown the boy pornographic material. As a result, the State charged Gross on February 26, 2003, with child molesting, a Class B felony, and dissemination of matter harmful to minors, a Class D felony. Gross was arrested on February 28, 2003, and appeared in court on March 6, 2003, for an initial hearing. However, the court did not hold the initial hearing "due to the fact that [Gross] does not comprehend the Court's advisements." Appellant's Appendix at 146. The trial court appointed a public defender to represent Gross and directed the public defender to submit a petition for psychiatric evaluation, which she did. The trial court appointed two psychiatric evaluators. After the trial court received the psychiatric evaluations, the court held a competency hearing and determined that "there is sufficient evidence that [Gross] is not capable of understanding the nature of the proceedings against him, and he is not able to assist in his defense based on his lack of competency." Id. at 130. On November 5, 2003, Gross was committed to DMHA for placement.[1] On January 15, 2004, his case was stayed.

---

[1] Gross was originally placed at Evansville State Hospital. On March 26, 2008, Evansville State Hospital advised the court that Gross was being released and had the ability to understand the proceedings against him. Gross was transported to the Johnson County Jail awaiting trial. His counsel filed another petition for psychiatric evaluation in September of 2008, and in February of 2009, the trial court again found him incompetent to stand trial and committed him to DMHA, which placed him at Madison State Hospital where he has remained for the duration of these proceedings.

[4]     In February 2014, DMHA filed a report with the trial court indicating Gross "remains incompetent to stand trial and legal education suggests he may not be restorable to legal competence." *Id.* at 49. On February 28, 2014, Gross filed a Motion to Dismiss. On August 6, 2014, following a hearing, the trial court found that the maximum sentence the trial court could impose on Gross if convicted of the charges against him was twenty-three years;[2] that there was no evidence Gross was not entitled to Class I credit time, earning one day credit time for each day he was confined; and that he would have to serve a total of eleven years and 182 days at that level of credit time to have served the maximum amount of time allowed by law. The trial court calculated Gross would serve that amount of time as of August 29, 2014, and expressed a belief that Gross's motion should be renewed at that time. But as that date had not yet been reached, the trial court denied the motion to dismiss. *Id.* at 4-7.

[5]     On August 26, 2014, Gross filed a Request for Hearing on Release from Custody referencing the trial court's previous order. The trial court held a hearing on August 28, 2014, at which time the State argued that due to the charges against him, Gross's credit time was restricted by Indiana Code section 35-31.5-2-72 and he had not yet served his maximum time. The trial court issued the following order on September 2, 2014, denying Gross's request for release from custody:

---

[2] A Class B felony conviction carries a maximum sentence of twenty years, Ind. Code § 35-50-2-5, and a Class D felony conviction carries a maximum sentence of three years, Ind. Code § 35-50-2-7(a).

7. A person's credit time may be restricted under IC 35-31.5-2-72 if the offense implicates child molesting involving sexual intercourse or deviate sexual conduct . . . and if the offense is committed by a person at least twenty-one (21) years of age and the victim is less than twelve (12) years of age.

8. If a person's credit time is restricted then a person is assigned to class IV for purposes of credit time.

9. "A person assigned to Class IV earns one (1) day of credit time for every six (6) days the person is imprisoned for a crime or confined awaiting trial or sentencing," . . . while "[a] person assigned to Class I earns one (1) day of credit time for each day the person is imprisoned for a crime or confined awaiting trial or sentencing."

10. The Court finds that [Gross's] time is credit restricted and is entitled to earn only one (1) day of credit time for every six (6) days he is confined while awaiting trial.

11. Since [Gross] has not been incarcerated or committed for the maximum sentence allowed by law as of today's date, [Gross's] motion is DENIED.

*Id.* at 2. The trial court certified this interlocutory order at Gross's request and this court accepted jurisdiction of the appeal.

# Discussion and Decision

## I. Standard of Review

[6] We review a trial court's ruling on a motion to dismiss a charging information for an abuse of discretion. *Matlock v. State*, 944 N.E.2d 936, 938 (Ind. Ct. App. 2011). Trial courts "have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights." *State v. Davis*, 898 N.E.2d 281, 285 (Ind. 2008). Indiana Code section 35-34-1-4 is legislative recognition of this authority, permitting the

dismissal of an information for various reasons, including on "[a]ny other ground that is a basis for dismissal as a matter of law." Ind. Code § 35-34-1-4(a)(11). "A violation of a defendant's constitutional right to due process certainly fits in that category." *Davis*, 898 N.E.2d at 285.

## II. Gross's Due Process Rights

### A. Criminal Commitment Overview

Due process precludes trying a defendant while he is incompetent. *Id.* at 284. The test for determining competency in Indiana is whether the defendant "has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding, and whether the defendant has a rational as well as a factual understanding of the proceedings against him." *Id.* (quoting *Adams v. State*, 509 N.E.2d 812, 814 (Ind. 1987)).

Indiana statutes "control the appropriate way to determine a defendant's competency and, if necessary, to commit the defendant and provide restoration services." *Curtis v. State*, 948 N.E.2d 1143, 1153 (Ind. 2011). When a criminal defendant is thought to lack the ability to understand court proceedings and assist in his own defense, the trial court sets a hearing and appoints two or three disinterested psychiatrists or psychologists to evaluate the competency of the defendant. Ind. Code § 35-36-3-1(a). If, following the hearing at which evidence pertaining to the defendant's competency is presented, the trial court determines that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the trial will be delayed while the

defendant is committed to DMHA, which "shall provide competency restoration services or enter into a contract for the provision of competency restoration services by a third party . . . ." Ind. Code § 35-36-3-1(b).

Within ninety days of a defendant's admission to a state institution, the superintendent of the institution must certify to the court "whether the defendant has a substantial probability of attaining the ability to understand the proceedings and assist in the preparation of the defendant's defense within the foreseeable future." Ind. Code § 35-36-3-3(a). If that probability does not exist, the state institution must initiate regular commitment proceedings. Ind. Code § 35-36-3-3(b). If a substantial probability does exist, then the state institution must retain the defendant until the defendant attains the necessary ability and is returned to court for trial or for six months after admission to the institution, whichever occurs first. *Id.* If the defendant has not attained that ability within six months, the state institution must institute regular commitment proceedings under Indiana Code 12-26. Ind. Code § 35-36-3-4.

## B. Due Process Implications

In *Jackson v. Indiana*, the United States Supreme Court held:

> a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant.

406 U.S. 715, 738 (1972).[3]  Although noting that dismissal of charges "has usually been thought to be justified" by either the Sixth/Fourteenth Amendment right to a speedy trial or by the "denial of due process inherent in holding pending criminal charges indefinitely over the head of one who will never have a chance to prove his innocence[,]" the *Jackson* court declined to decide whether dismissal of the pending charges was required because the issue had not been squarely presented to the Indiana courts.  406 U.S. at 740.

[11]     In *Davis*, our supreme court took up that undecided issue.  The court noted that the deprivation of the defendant's liberty through commitment must be justified on the basis of a legitimate state interest.  898 N.E.2d at 288.

> Justification for the commitment of an incompetent accused is found in the State's interest in the restoration of the accused to competency because of the right of the public and the defendant to the prompt disposition of criminal charges pending against him, and the protection of the accused against being required to answer to charges that she lacks the capacity to understand or to assist her attorney in defending against.

*Id.* at 289 (citation omitted).  The defendant, charged with Class D felony criminal recklessness, had been confined since May 2004 under a commitment order.  Doctors found there was no substantial probability she would ever attain competency.  Her counsel filed a motion to dismiss the charge against her in March 2007.  The court noted that even if she were to recover competency and

---

[3] *Jackson* was decided under a previous version of our criminal commitment statute which did not provide for regular civil commitment proceedings and periodic review of the defendant's competence as part of the process.  The statute was amended in 1974 in apparent response to *Jackson*.  *See Davis*, 898 N.E.2d at 286 n.4.

be tried and convicted, she had become immune from being sentenced to further confinement in November 2005 when she had been confined for half of the maximum term of imprisonment for a Class D felony. Thus, the defendant's pretrial confinement had extended beyond the maximum period of any sentence that could be imposed for a conviction. The court also noted that there might be circumstances in which the State's interest in determining guilt even though the accused had already been punished would be sufficiently important to overcome the accused's substantial liberty interest. *Id.*

> For example, a conviction would be required to enhance a sentence for a felony committed as a member of a criminal gang, to prohibit possession of a firearm, to require registration as a sex offender, or to prove status as a habitual offender, a habitual substance offender, or a habitual traffic offender.

*Id.* (citations omitted). However, the State had advanced no argument that its interests outweighed the defendant's substantial liberty interest, and the court concluded that "it is a violation of basic notions of fundamental fairness as embodied in the Due Process Clause of the Fourteenth Amendment to hold criminal charges over the head of . . . an incompetent defendant, when it is apparent she will never be able to stand trial." *Id.* at 290. Therefore, the dismissal of the charge was affirmed.

[12] In subsequent cases, our supreme court has refined the *Davis* holding. In *Curtis*, 948 N.E.2d at 1153-54, the court noted that the statutory procedures for criminal commitment balance the various interests at stake: the defendant's liberty interest versus the State's interests in restoring the accused to competency and protecting the defendant against proceedings he cannot

understand. The court also noted that "[o]f course, the State's interests cannot be realized if there is a finding that a defendant cannot be restored to competency." *Id.* at 1154. In *Curtis*, the procedures of Indiana Code chapter 35-36-3 had not been followed in that the trial court had not found the defendant incompetent and he had not been committed to the DMHA; therefore, the defendant had no valid due process claim and there was no cause to dismiss the charges against him on fundamental fairness grounds. *Id.* at 1154.[4] And in *State v. Coats*, 3 N.E.3d 528, 534 (Ind. 2014), the court stressed that although the State's interest in the restoration of an accused to competency cannot be realized if there is a finding that such restoration is not substantially probable in the foreseeable future, such a finding must be properly made pursuant to the statutory procedure. In *Coats*, the trial court made the initial finding that the defendant was not competent based upon the court-appointed doctors' reports, but did not commit him to DMHA because it further found based on those reports that the defendant could not be restored to competency. Our supreme court remanded to the trial court with instructions to commit the defendant to DMHA for competency restoration services because the trial court does not have the discretion to refuse to order commitment under these circumstances. "Only by following the strict statutory framework set forth by the legislature in Ind. Code chapter 35-36-3 can both the interests of the State

---

[4] The charges were nonetheless dismissed because Indiana Criminal Rule 4(C) had been violated. *Id.* at 1151.

and [the defendant] be protected." *Id.* at 535. That framework includes clear and separate duties and responsibilities for the trial court and the superintendent of the institution to which the defendant is committed: Indiana Code section 35-36-3-1 gives the trial court the responsibility of initially determining whether a defendant is competent to stand trial, but section 35-36-3-3 vests only the superintendent with the authority to make a finding regarding the defendant's future competency to stand trial. *Id.* at 532.

## C. Has Gross Served the Maximum Sentence?

[13] The trial court declined to dismiss the charges against Gross upon finding that he would be a credit restricted felon based upon his charge of child molesting and had therefore not yet served his maximum possible sentence.

[14] The credit restricted felon statute became effective on July 1, 2008, and applied only to persons convicted after June 30, 2008. P.L. 80-2008, sec. 6. At the time it was enacted, the statute defined a credit restricted felon as one who has been convicted of child molesting involving sexual intercourse or deviate sexual conduct if the offender is at least twenty-one years old and the victim is less than twelve years old. Ind. Code § 35-41-1-5.5 (2008). A credit restricted felon is initially assigned to Class IV, Ind. Code § 35-50-6-4(b) (2008), and earns one day of credit time for every six days of confinement, Ind. Code § 35-50-6-3(d) (2008). Gross argues the trial court abused its discretion in finding that he was a credit restricted felon because such a finding represents an ex post facto application of the statute. *See* Appellant's Brief at 5.

[15] In *Upton v. State*, 904 N.E.2d 700 (Ind. Ct. App. 2009), *trans. denied*, the defendant committed several child molesting offenses between 2003 and 2007. When he was sentenced, the trial court ordered that he would receive Class IV pre-sentencing credit time pursuant to the newly-enacted credit restricted felon statute. We reversed the trial court's classification of the defendant as a credit restricted felon because it was an ex post facto violation. *Id.* at 706. An ex post facto law is retrospective—that is, it applies to events occurring before its enactment and disadvantages the offender affected by it. *Id.* at 705. Application of the credit restricted felon statute to the defendant was an ex post facto violation because it was applied to a crime committed before it was enacted and disadvantaged the defendant because at the time he committed his offenses, the law did not so restrict the credit time he could earn. *Id.* at 705; *see also Gaby v. State*, 949 N.E.2d 870, 883 (Ind. Ct. App. 2011) (same).

[16] Based upon this precedent, the State agrees with Gross that the trial court erroneously ruled that he is a credit restricted felon and has not yet been confined for the maximum time permitted by law. *See* Brief of Appellee at 6. As Gross committed his alleged offenses in 2003 at which time he would have been entitled to one-for-one credit time, he had been confined for the length of his maximum possible sentence as of August 29, 2014. However, the State does not agree that this necessitates dismissal of the charges against Gross.

# D. Is Gross Entitled to Dismissal?

[17] Gross contends that because he has been confined for the maximum time allowed by law, the trial court abused its discretion by failing to dismiss the charges pending against him. The State argues that we should not order the charges to be dismissed. Relying on the language in *Davis* referencing possible instances in which the State could have a legitimate interest in determining guilt or innocence besides punishment, *see* 898 N.E.2d at 289, the State asks that we remand to the trial court to "give the State an opportunity to determine if any such interests are present[,]" Brief of Appellee at 8. Specifically, the State argues that, unlike the situation in *Davis*, some of the collateral consequences of a conviction could be present here, such as sex offender registration requirements or status as an habitual offender.

[18] The State may indeed have a legitimate interest in obtaining a conviction in this case. However, it was determined as long ago as 2011 by the superintendent of the institution where Gross was confined that there was a substantial probability that he would never be competent to stand trial. *See* App. at 77 (competency-to-stand trial report from superintendent dated February 21, 2011 stating that "at present Mr. Gross remains incompetent to stand trial and there is a substantial probability that he will never be competent."); *see also id.* at 70 (annual report from superintendent dated February 17, 2012 stating that "Mr. Gross remains incompetent to stand trial and is not likely to ever be competent due to level of mental retardation."); *id.* at 61 (annual report from superintendent dated January 28, 2013 stating defendant is "not likely to ever

be competent . . ."); *id.* at 49 (annual report from superintendent dated February 6, 2014 stating "Mr. Gross remains incompetent to stand trial and legal education suggests he may not be restorable to legal competence."). Gross's pretrial criminal confinement has extended beyond the maximum period he could be ordered to serve if convicted and a finding has been made (repeatedly) by the superintendent of the institution where Gross is confined that there is a substantial probability that he will never be restored to competency and able to stand trial. Therefore, any interest the State might have in a conviction cannot be realized, and it is a violation of the basic notions of fundamental fairness embodied in the due process clause to continue to hold criminal charges over his head indefinitely. *See Davis*, 898 N.E.2d at 286 ("*Jackson* made it clear that a state cannot continue to confine the defendant under its criminal commitment statutes if it is unlikely that the defendant ever will attain competency.").

[19]   The State also argues we should not order the charges to be dismissed because the State "will most likely wish to file for a civil commitment" and "should have the opportunity to make [the] determination" whether Gross is mentally ill and dangerous to other children. Brief of Appellee at 8. Gross is already under a regular civil commitment order,[5] which, pursuant to Indiana Code section 12-

---

[5] Indiana Code chapter 35-36-3 provides that under certain circumstances and within certain timeframes, the state institution shall initiate regular commitment proceedings under Indiana Code article 12-26 with regard to a defendant found incompetent to stand trial. Although there is no information in this record regarding the civil commitment proceedings leading to Gross's continued confinement at Madison State Hospital, it is likely that such proceedings are being conducted in Jefferson County. *See* App. at 115 (letter to the trial court from superintendent of Evansville State Hospital following Gross's first incompetency stating "[w]e wish to petition the Court for a Regular Commitment at this time because we do not feel he will become competent to stand trial in the foreseeable future. . . . A Petition for Regular Commitment will be filed in Vanderburgh

26-7-5(b) continues until such time as he has been discharged from the institution and the trial court which entered the original commitment order enters an order terminating the commitment. Moreover, if the State believes it needs an additional civil commitment order for some reason, the trial court's order of August 6, 2014, indicating the trial court's belief that Gross's motion to dismiss should be renewed as of August 29, 2014, should have prompted the State to begin the process of determining whether that was appropriate. Given that Gross has been confined for over twelve years at this point, the State has had ample opportunity to do so. We will not further prolong Gross's criminal confinement on account of these criminal charges.

# Conclusion

[20] The trial court abused its discretion in finding that Gross was subject to the credit restricted felon statute and denying Gross's motion to dismiss on that ground. Because Gross has been confined in excess of the maximum time he could be incarcerated if found guilty of the charges against him and because the superintendent at the facility at which he is confined has made a finding that there is a substantial probability he will never be restored to competency, due process requires that the charges against him be dismissed. The order of the trial court denying Gross's motion to dismiss is reversed.

County Superior Court."). The fact that Gross may no longer be held under criminal charges does not necessarily mean he is no longer subject to his regular commitment order.

Reversed.

May, J., concurs.

Mathias, J., concurs in result with opinion.

Charles Gross,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
41A01-1411-CR-467

**Mathias, Judge, concurring.**

[22] I concur wholeheartedly in Judge Robb's well-reasoned opinion. I write separately for two reasons.

[23] First, I wish to emphasize that there is little reason to believe that dismissal of the criminal charges against Gross will lead to his release into society. Instead, Gross mostly likely faces a lifetime of civil commitment as a result of his mental illness. *See supra*, slip op. at 14 n.5.

[24] Secondly, I wish to repeat what I wrote in concurring in *Habibzadah v. State*, 904 N.E.2d 367, 370 (Ind. Ct. App. 2009):

> A large and ironic lapse in the logic of our criminal justice system is that its initial imperative is to determine the competency of defendants prospectively, to assist counsel at trial. And the courts can determine whether the defendant is able to assist in his or her own defense at any time, whether relatively soon after arrest, or long thereafter, sometimes years after arrest. Only after a defendant is determined competent is the issue of competency at the time of the crime raised, and only along with the trial of the facts of the offense alleged.

*Id.* at 370 (Mathias, J., concurring).

[25] I continue to believe that our criminal procedure should permit a psychiatric examination of a defendant who likely suffers from serious mental illness very early after arrest to determine whether the defendant could have possibly had the requisite *scienter* or *mens rea* at the time of the crime. As I noted in *Habibzadah*:

> Our criminal justice system has a mechanism to deal with temporary incompetence as it pertains to criminal culpability, or *scienter*, but fails miserably when faced with the likely long-term or permanent mental illness of a criminal defendant. Even *Davis* acknowledges that confinement of an incompetent person may be a violation of due process, but only after the defendant has been civilly committed for the maximum sentence allowed under the charges filed, when the State does not have an interest that outweighs the defendant's liberty interest.

> Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being unchargeable because of mental illness under Indiana Code section 35-41-3-6, and not just guilty but mentally ill under Indiana Code section 35-36-2-1, *et. seq.* In either case, the commitment proceedings provided for in Indiana Code section 35-36-2-4 would both protect society and best care for the defendant involved.

Whether such a procedure is promulgated by the Indiana Supreme Court through its rule-making process or by the Indiana General Assembly through statute, *it is time for the truly long-term, incompetent criminal defendant to have an earlier and intervening opportunity for a determination of his or her competency at the time of the crime alleged.* Such a procedure convened soon after arrest, rather than years later when stale evidence and dim or non-existent memories are all that are left, or never, would best serve society and the defendant.

*Id.* at 371 (emphasis added); *see also A.J. v. Logansport State Hosp.*, 956 N.E.2d 96, 118 (Ind. Ct. App. 2011) (Mathias, J., concurring) (expressing the same concerns where, despite earliest expert opinions establishing that the defendant would never attain competency, the defendant was sent off to competency restoration services and held there for over two years).

[26]     With the additions of these observations, I fully concur.